Francis "Swede" COLEN,
Appellant–Plaintiff,

v.

OHIO COUNTY, Indiana, acting by and through its several officers and bodies, to-wit, The Ohio County Council, collectively and by its individual elected members; being Doug Baker, President, April Hautman, Dillon Dorrell, Tamara Elbright, Grober Sefton, Howard Wiesmann, and Rick Liggett, The Board of Commissioners, collectively and by its individual elected members; being Connie Brown, President, Dale Scudder and Shane Koons, The Ohio County Auditor, being Deborah Thomason as those offices have been and currently and hereafter will be filled by an elected officer, Appellees–Defendants.

No. 58A01–0709–CV–434.

Court of Appeals of Indiana.

May 8, 2008.

Publication Ordered June 25, 2008.

Barbara A. Wyly, Lawrenceburg, IN, Attorney for Appellant.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellees.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Francis "Swede" Colen appeals the trial court's order dismissing his suit against Ohio County [1] (the "County") seeking back pay he claims he was entitled to for his work as Ohio County Sheriff from 2003 through 2006. Colen claims the County was required to pay him a minimum salary under Indiana Code section 36–2–13–2.8, and that the County's method of paying him a lower salary under Indiana Code section 36–2–5–3 violated the Indiana Constitution's provision regarding separation of powers. Concluding that the County was entitled to pay Colen under section 36–2–5–3 and that this procedure is not unconstitutional, we affirm.

### Facts and Procedural History

Colen served as Sheriff of Ohio County from January 1, 2003, until January 1, 2007. The County paid Colen $32,000 in 2003, $33,000 in 2004, $34,100 in 2005, and $34,850 in 2006.[2] On December 7, 2006, Colen filed a Verified Petition for Writ of Mandamus and Damages, alleging that the County was required to pay him under Indiana Code section 36–2–13–2.8, which establishes minimum base salaries for sheriffs. Colen alleged that had the County paid him under this section, he would have received roughly $56,000 more than he actually received. On February 5, 2007, the County filed a motion to dismiss under Indiana Trial Rule 12(B)(6), claiming that it was allowed to pay Colen under a different statute, Indiana Code section 36–2–5–3, which identifies no minimum base salary. On June 11, 2007, the trial court held a hearing. On July 27, 2007, the trial court issued an order granting the County's motion to dismiss, finding that the County had legally paid Colen under section 36–2–5–3. Colen now appeals.

---

1. Colen named as defendants: "Ohio County, Indiana, acting by and through its several officers and bodies, to-wit, the Ohio County Council, collectively and by its individual elected members; being Doug Baker, President, April Hautman, Dillon Dorrell, Tamara Elbright, Grober Sefton, Howard Wiesmann, and Rick Liggett, the Board of Commissioners, collectively and by its individual elected members; being Connie Brown, President, Dale Scudder and Shane Koons, the Ohio County Auditor, being Deborah Thomason as those offices have been and currently and hereafter will be filled by an elected officer." Appellant's App. at 9.

2. These figures apparently do not include any amount that Colen was entitled to pursuant to Indiana Code section 6–8.1–8–3(c)(2), under which "the sheriff shall keep the part of the [tax warrant] collections that represents the ten percent (10%) collection fee added under section 2(b) of this chapter."

## Discussion and Decision

### I. Standard of Review

■ A motion to dismiss for failure to state a claim upon which relief can be granted under Indiana Trial Rule 12(B)(6) "tests the legal sufficiency of a claim, not the facts supporting it." *Scruggs v. Allen County / City of Fort Wayne*, 829 N.E.2d 1049, 1051 (Ind.Ct.App.2005). We will affirm a trial court's dismissal under rule 12(B)(6) only when "it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief." *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind.Ct.App.2005), *trans. denied.* We will examine only the complaint, and not other evidence in the record. *Lawson v. First Union Mortgage Co.*, 786 N.E.2d 279, 281 (Ind.Ct.App.2003). We will "consider all allegations in the complaint to be true," and will view the motion "in the light most favorable to the nonmoving party by resolving all inferences in the non-moving party's favor." *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1023 (Ind.Ct.App.2005), *trans. denied.*

### II. Statutory Interpretation

Colen argues the County was required to pay him under one of the two statutes specifically addressing sheriffs' salaries. The County counters that it was entitled to pay Colen under the statute applying to the pay of county officers and employees in general. The resolution of this issue depends on our interpretation of the three statutes. We review questions relating to statutory interpretation de novo. *Sun Life Assur. Co. of Canada v. Ind. Dep't of Ins.*, 868 N.E.2d 50, 55 (Ind.Ct.App.2007), *trans. denied.*

■ "The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless indicated by statute." *Scott v. Irmeger*, 859 N.E.2d 1238, 1239 (Ind.Ct.App.2007). Therefore, "[t]he first and often the last step in interpreting a statute is to examine the language of the statute." *Thompson v. Vigo County Bd. of County Comm'rs*, 876 N.E.2d 1150, 1153 (Ind.Ct.App.2007). "A statute that is clear and unambiguous must be read to mean what it plainly expresses, and its plain and obvious meaning may not be enlarged or restricted." *Ind. Mun. Power Agency v. Town of Edinburgh*, 769 N.E.2d 222, 226 (Ind.Ct.App. 2002). We will presume that the legislature intended a statute's language "to be applied logically and not to bring about an unjust or absurd result." *Naugle v. Beech Grove City Schs.*, 864 N.E.2d 1058, 1068 (Ind.2007). If a statute is unambiguous, "we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning." *Thompson*, 876 N.E.2d at 1153. In other words, unambiguous statutes need no interpretation or construction. *State ex rel. Ind. State Police v. Arnold*, 881 N.E.2d 1105, 1109 (Ind. Ct.App.2008).

Indiana Code section 36–2–5–3 states, in relevant part:

(a) The county fiscal body shall fix the compensation of officers, deputies, and other employees whose compensation is payable from the county general fund, county highway fund, county health fund, county park and recreation fund, aviation fund, or any other fund from which the county auditor issues warrants for compensation. This includes the power to:

(1) fix the number of officers, deputies, and other employees;

(2) describe and classify positions and services;

(3) adopt schedules of compensation; and

(4) hire or contract with persons to assist in the development of schedules of compensation.

Indiana Code section 36–2–13–2.5 states, in relevant part:

(a) The sheriff, the executive, and the fiscal body may enter into a salary contract for the sheriff.

(b) A sheriff's salary contract must contain the following provisions:

(1) A fixed amount of compensation for the sheriff in place of fee compensation.

(2) Payment of the full amount of the sheriff's compensation from the county general fund in the manner that salaries of other county officials are paid.

(3) Deposit by the sheriff of the sheriff's tax warrant collection fees (as described in IC 6–8.1–8–3) in the county general fund for use for any general fund purpose.

(4) A procedure for financing prisoners' meals. . . .

\* \* \*

(7) Other provisions concerning the sheriff's compensation to which the sheriff, the county executive, and the fiscal body agree.

(c) A salary contract is entered under this section when a written document containing the provisions of the contract is:

(1) approved by resolution of both the executive and the fiscal body; and

(2) signed by the sheriff.

Indiana Code section 36–2–13–2.8 states, in relevant part:

(a) In place of any other form of compensation, including a salary contract entered into under section 2.5 of this chapter, a county may pay a sheriff's compensation as provided in this section from the county general fund in the manner that salaries of other county officials are paid. However, the sheriff may retain the sheriff's tax warrant collection fees (as described in IC 6–8.1–8–3).

(b) If a county pays a sheriff's compensation under this section, the county fiscal body shall make an appropriation in the usual manner from the county general fund for feeding prisoners. The sheriff or the sheriff's officers, deputies, or employees may not make a profit from the appropriation.

(c) A county that pays a sheriff's compensation under this section shall pay the sheriff as follows:

(1) In a county having a population of not more than twenty thousand (20,000), the county must pay the sheriff an annual salary that is equal to at least fifty percent (50%) of the annual minimum salary that would be paid by the state to a full-time prosecuting attorney in the county.

(2) In a county having a population of:

(A) more than twenty thousand (20,000); and

(B) not more than forty thousand (40,000); the county must pay the sheriff an annual salary that is equal to at least sixty percent (60%) of the annual minimum salary that would be paid by the state to a full-time prosecuting attorney in the county.[3]

The County argues that sections 2.5 and 2.8 are not the exclusive methods of determining a sheriff's salary, and that it may pay its sheriff under section 36–2–5–3. It points out that both sections 2.5 and 2.8 employ the term "may" and argues that the phrase in section 2.8, "any other form

---

3. The statute goes on to establish the sheriff's minimum salary in larger counties.

of compensation, *including* a salary contract" (emphasis added), indicates that this third method under section 36–2–5–3 of compensating the sheriff is authorized. Colen argues that the two statutes dealing specifically with a sheriff's salary should be construed to be the sole means by which a county may pay its sheriff.

We agree with the County. The plain meaning of the word "including" indicates that some valid method of paying a sheriff outside of section 2.5 and 2.8 exists. *See* Black's Law Dictionary, 766 (7th ed. 1999) ("The participle *including* typically indicates a partial list."); Merriam Webster Online Dictionary (defining "include" as "to take in or comprise as a part of a whole or group," and indicating that "include suggests the containment of something as a constituent, component, or subordinate part of the larger whole"), *available at,* www.merriam-webseter.com/dictionary/include. Therefore, we interpret section 36–2–13–2.8 to indicate that some method for paying sheriffs exists outside of sections 2.8 and 2.5. Also, sections 2.5 and 2.8 use the permissive language, "may," further indicating that counties are not required to pay their sheriffs under either section 2.8 or 2.5. *See Romine v. Gagle,* 782 N.E.2d 369, 380 (Ind.Ct.App.2003) ("The term 'may' in a statute ordinarily implies a permissive condition and a grant of discretion."), *trans. denied; Williams v. City of Indianapolis Dep't of Pub. Works,* 558 N.E.2d 884, 887 (Ind.Ct.App.1990) ("Normally, the word 'may' in a statute implies a permissive condition and a grant of discretion."), *trans. denied.*

Although Colen points out that chapter 36–2–13 deals specifically with sheriffs, while section 36–2–5–3 deals with county officers and employees in general,[4] nothing in chapter 36–2–13 indicates that the legislature intended to limit the methods by which counties could pay their sheriffs to those identified sections 36–2–13–2.5 or 2.8. Further, we note that Indiana Code section 36–2–5–14 indicates that chapter 5 "does not affect the salaries of judges, officers of courts, prosecuting attorneys, and deputy prosecuting attorneys whose minimum salaries are fixed by statute...." As demonstrated by this section, the legislature identified specific public officers who were not affected by chapter 36–2–5, but did not identify sheriffs, thereby providing further support that a county may elect to pay its sheriff under section 36–2–5–3.

Although we agree with Colen that it may seem somewhat incongruous for the legislature to prescribe minimum base salaries for sheriffs where the county elects to proceed under section 2.8,[5] but to prescribe no such minimum base when the county pays the sheriff under section 36–2–5–3, we do not believe that this interpretation renders such an absurd result as to require us to ignore section 2.8's plain language, which clearly contemplates methods of paying a sheriff other than under section 2.8 or 2.5 and uses language indicating the statutes' permissive nature.

4. Colen's argument regarding the distinction between public employees and public officers is somewhat misplaced, as section 36–2–5–3 states that it applies to *"officers,* deputies, and other employees." (Emphasis added).

5. We note that the legislature has recently amended statutes dealing with sheriffs' salaries and has added a statute providing limits for sheriffs' salaries. *See* P.L. 40–2008 (amending Indiana Code sections 6–8.1–8–3, 36–2–13–2.5, 36–2–13–2.8, and adding section 36–2–13–17, effective January 1, 2009). Given this somewhat incongruous result, the legislature may wish to further address the statutory scheme by which our sheriffs are paid.

## III. Constitutional Argument

Colen also argues that allowing the county council and county commission to set the sheriff's salary under section 36–2–5–3 violates Indiana Constitution Article 3, section 1, under which

The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.

■ This court will presume that statutes are constitutional "until that presumption is overcome by a contrary showing." *Roberts v. ACandS, Inc.,* 873 N.E.2d 1055, 1059 (Ind.Ct.App.2007). "The burden is on the party challenging the constitutionality of the statute, and all doubts are resolved against that party." *Cadle Co. II. Inc. v. Overton,* 857 N.E.2d 433, 435 (Ind. Ct.App.2006), *trans. denied.*

■ Colen states his argument regarding the constitutionality of allowing the County to pay him under section 36–2–5–3 as follows:

What [Colen] disputes is the power of the county council, which is made up of elected county legislative officials who run for offices as Democrats, Republicans, Independents etc[.], having the power to set the salary of an elected county executive official who also runs for office as a Democrat, Republican, Independent, etc. To give the legislative branch power of the purse over the executive branch in terms of approving his budget is a part of our balance of power. But to completely control a member of another branch of the government by having the power to reward or punish that person by having total control not only over his entire office budget, but his salary as well, is to put a complete strangle-hold on the other branch of government.

Appellant's Brief at 7.

The first problem with Colen's argument is that he overstates the control that the County has over his salary. First, an elected county officer's salary "may not be changed in the year for which it is fixed." Ind.Code § 36–2–5–13. Second, Colen fails to acknowledge that local county boards also establish and control a sheriff's salary under section 36–2–2.8, albeit with a minimum base, and are in charge of negotiating the sheriff's salary contract under section 36–2–13–2.5.[6] Also, Colen makes no argument that the County actually did control his actions, but alleges merely that interpreting this statute to allow the County to fix the sheriff's salary would allow it to do so. We find no material distinction between allowing a county council to fix the salary of a member of the executive branch and allowing our state legislature to fix our governor's salary, as it does under Indiana Code section 4–2–1–1.

Colen seems to acknowledge the power of the state legislature to fix the salaries of members of the executive branch, but takes exception to the delegation of this power to the county council. However, Indiana courts have consistently held per-

---

**6.** We recognize the distinction between the negotiation of a salary contract under section 2.5 and enabling the County to establish the sheriff's salary under section 36–2–5–3. However, in both situations the County has some control over the sheriff's pay. Also, we note that under Indiana Code section 36–2–5–4, officers paid under that chapter file annual proposals for their salary. Therefore, this procedure is somewhat similar to a contract negotiation, although we recognize that the county fiscal body retains the ultimate say as to the sheriff's salary.

missible the legislature's delegation of the ability to set salaries of public employees and officers. *See Benton County Council v. State ex rel. Sparks,* 224 Ind. 114, 120, 65 N.E.2d 116, 119 (1946) ("[T]he fixing of salaries is not a strictly legislative matter and may be delegated to a department of government other than the legislature."); *Arnett v. State,* 168 Ind. 180, 80 N.E. 153, 154 (1907) ("[T]he fixing of the compensation of a public officer is not so inherently of a legislative character that it may not be delegated."); *Tipton County ex rel. Tipton County Council v. State ex. rel. Nash,* 731 N.E.2d 12, 15 (Ind.Ct.App.2000) ("The legislature may delegate its authority to establish judicial salaries to county governments."), *trans. denied.*

We conclude that the procedure by which the County paid Colen does not run afoul of the Indiana Constitution.

### Conclusion

We conclude the trial court properly granted the County's motion to dismiss for failure to state a claim upon which relief can be granted, as the County was entitled to pay Colen under Indiana Code section 36–2–5–3, and this procedure was not unconstitutional.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.

### ORDER

On May 8, 2008, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellees, by counsel, have filed a Verified Motion for Publication.

Having considered the matter, the court FINDS AND ORDERS AS FOLLOWS:

1. The Appellees' Verified Motion for Publication is GRANTED and this Court's opinion heretofore handed down in the cause on May 8, 2008, marked Memorandum Decision, Not for Publication in now ORDERED PUBLISHED.

Friedlander, Robb, Mathias, JJ., concur.