[Cite as *State v. Rose*, 2021-Ohio-2371.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                        Court of Appeals No. OT-20-018

      Appellee                                  Trial Court No.  18 CR 096

v.

Richard Rose, Jr.                                  **DECISION AND JUDGMENT**

      Appellant                                 Decided:  July 9, 2021

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Barbara Galle Rivas, Assistant Prosecuting Attorney, for appellee.

W. Alex Smith, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Richard Rose, Jr., appeals from judgment entered by the Ottawa County Court of Common Pleas on August 13, 2020, sentencing him to five consecutive terms of life imprisonment.  For the reasons that follow, we affirm the judgment of the trial court.

**{¶ 2}** Appellant sets forth the following assignment of error:

I. The defendant was convicted based on insufficient evidence.

**Statement of the Case and Facts**

**{¶ 3}** The victim in this case was born on June 10, 1998.  In 2002, when she was approximately 4 years old, her mother died of an overdose.  As a consequence, she came to live with her aunt and her uncle, appellant Richard Rose, Jr.  From 2002 until the fall of 2005, the victim, her aunt, and appellant lived at 111 Springcrest Dr., Danbury Township, Ottawa County, Ohio.  Also living in the home were the aunt's two sons, who are, respectively, 8 and 10 years older than the victim.  Sometime late in 2005, the family moved to Cartersville, Georgia.  According to school records, the victim was enrolled in the Danbury school district beginning in the fall of 2004 through the end of the school year in the spring of 2005.

**{¶ 4}** At trial, the victim testified that during the period of October 1, 2004, through September 30, 2005, when she was just six to seven years old, appellant sexually assaulted her while at the Danbury Township home.  According to the victim, assaults that took place during this period included acts of fellatio, cunnilingus, and digital penetration, and they occurred in areas of the home, including appellant's bedroom and the victim's bedroom, and in a shed located on the home's property.

**{¶ 5}** At trial, the victim described three specific encounters during which she was sexually abused by appellant.  In the first, the victim entered appellant's bedroom after appellant had invited her in.  Upon climbing into bed with him, she noticed that he was

2.

naked under the blanket. She asked him what his penis was, and he indicated that she was supposed to kiss it to express her love. She was also made to lick it. After a period of time, appellant climaxed. Thereafter, appellant said it was his turn, and he put the victim back on the bed and performed cunnilingus on her. The encounter occurred during the fall or winter months in late 2004 through early 2005, and it lasted approximately 30 minutes. Appellant told the victim that what happened during that time was to be their secret.

{¶ 6} The second encounter took place in the victim's bedroom in Danbury Township, less than a week after the first. The victim recalled that it was bedtime and that appellant had come into her room to read her a story. She was again forced to perform fellatio on him, although this time he did not climax. Appellant then performed cunnilingus on the victim. This encounter lasted approximately 15-20 minutes.

{¶ 7} The third encounter took place in the shed behind the Danbury Township home, during the spring of 2005. The victim testified that she had gone outside to find appellant and when she discovered him in the shed, he told her a tale about how he had gotten different chemicals that burned off his body hair. After telling her this tale, he made her turn around and he attempted to put his penis inside of her. (The victim testified that he was unsuccessful, as he suffered from erectile dysfunction.) He then digitally penetrated her, with his finger. The entire incident lasted approximately 15 minutes and scared the victim due to the fact that it had hurt her.

3.

{¶ 8} The victim testified that the sexual abuse by appellant occurred frequently, nearly every other day. She stated that she continued to be sexually abused by appellant until she reached the age of 11, but that the abuse did eventually become less frequent when the family reached Georgia and appellant became a truck driver, who was no longer at home as much.

{¶ 9} The victim did not disclose the abuse to anyone until she was in the fourth grade, when she told a friend. After telling her friend, she was confronted by her aunt, in the presence of appellant. At that time, she denied that any abuse had taken place, but later that night she told her aunt that the abuse had, in fact occurred. At her aunt's request the victim wrote out a statement about the sexual abuse that was committed by appellant.

{¶ 10} The victim's aunt did not make appellant immediately leave the home, and instead gave him several months to vacate. She testified that she did not contact the police, in order to avoid putting the victim through "the process." Appellant finally left the family's Georgia home in April of 2010. In November of 2010, the victim and her aunt moved from Georgia to Elyria, Ohio.

{¶ 11} In 2011, the victim began to experience mental health issues and she began cutting herself. These issues persisted until 2013, when the victim ran away from the home she shared with her aunt. She was then taken to the Nord Center, in Lorain, Ohio, for a mental health evaluation. During this evaluation, the victim again disclosed the sexual abuse by appellant. As a result, the Lorain County Children's Services opened an

4.

investigation. At this point, the Danbury Township police were contacted and Det. Sgt. Mark Meisler was assigned to the case.

{¶ 12} Det. Sgt. Meisler reviewed Lorain County Children's Services interviews of the victim, and he conducted his own interviews of the victim's aunt and appellant. During his interview with appellant, appellant denied sexually assaulting the victim, but he did make certain admissions about the victim pulling on his shorts and about the victim perhaps having seen a pornographic tape while she was with him in the cab of his truck. Det. Sgt. Meisler indicated that the case had not been prosecuted by the previous prosecutor due to insufficient evidence. The case languished from 2013 through late 2017, when there finally came a break in the case. The break in the case came in the form of text messages between the victim and appellant, in which the victim described the abuse and pain that appellant had put her through over the years, and in which appellant, in response, repeatedly apologized. The victim also supplied police with a video showing appellant apologizing to her for "molesting" her and then attempting to give reasons for his behavior.

{¶ 13} On April 5, 2018, appellant was indicted by the Ottawa County grand jury. He was charged with 50 counts of rape of a child in violation of R.C. 2907.02(A)(1)(b)(B). On August 16, 2018, the trial court granted the state's motion to dismiss count numbers six through 50, inclusive. A bill of particulars was provided to appellant on August 7, 2018. Count one alleges rape by fellatio occurring in appellant's bedroom. Count two alleges rape by cunnilingus occurring in appellant's bedroom.

5.

Count three alleges rape by cunnilingus occurring in the home, not in the victim's bedroom. Count four alleges rape by fellatio occurring in the home, not in the victim's bedroom. And count five alleges rape by digital penetration in the home.

{¶ 14} A jury trial on counts one through five commenced on August 11, 2020. On August 12, the jury returned a verdict of guilty on all five counts. On August 13, 2020, the trial court sentenced appellant on each count to life imprisonment with a possibility of parole after 10 years. The trial court ordered that each prison term be served consecutively, for a total aggregate sentence of life imprisonment with the possibility of parole after 50 years. On August 27, 2020, appellant timely filed his notice of appeal.

**Law and Argument**

{¶ 15} Appellant argues in this case that there was insufficient evidence to establish the elements of rape and, further, insufficient evidence to establish venue. An appellate court reviewing a challenge to the sufficiency of the evidence must view the evidence in a light most favorable to the prosecution, and must determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Haynes*, 2020-Ohio-1049, 152 N.E.3d 1217, ¶ 25 (6th Dist.), quoting *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making this determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *Id.*, citing *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d

6.

263, ¶ 132. Whether sufficient evidence exists to support a conviction is a question of law. *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 16} R.C. 2907.02 relevantly provides:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

* * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

* * *

(B) Whoever violates this section is guilty of rape, a felony of the first degree. * * * [I]f the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, except as otherwise provided in this division, the court may impose upon the offender a term of life without parole.

"Sexual conduct" is defined in R.C. 2907.01(A) as follows:

"Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however

slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶ 17} In Ohio, "the testimony of one witness, if believed by the jury, is sufficient to support a conviction." *State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, ¶ 133. This court has held that the evidence of a single witness in a rape case is sufficient to support a finding of guilt. *State v. Armstrong*, 6th Dist. Lucas No. L-87-338, 1988 WL 84376 (Aug. 12, 1988).

{¶ 18} Regarding venue, the Ninth District Court of Appeals in *State v. Williams*, 9th Dist. No. 14CA010641, 2015-Ohio-3932, 42 N.E.3d 347, ¶ 9, recognized:

Venue is proper in any county where the offense, or any element of the offense, was committed. R.C. 2901.12(A). While venue is not a material element of an offense, the State must prove venue beyond a reasonable doubt unless it is waived by the defendant. *State v. Headley,* 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983), citing *State v. Draggo,* 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981). 'Express evidence establishing venue is not necessary as long as the facts and circumstances of the case show beyond a reasonable doubt that the crime was committed in the county and state named in the indictment.' *State v. Simpson,* 9th Dist. Summit No. 21475, 2004-Ohio-602, 2004 WL 243451, ¶ 72, citing *State v.*

8.

*Dickerson,* 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus; *Headley* at 477, 453 N.E.2d 716.

{¶ 19} We begin with the evidence adduced at trial in support of establishing venue in this case. The applicable time period for all five charges of the indictment is the same: October 1, 2004 through September 30, 2005. The state presented abundant evidence that appellant lived in and committed five separate and distinct rapes while in Ottawa County. First and foremost, was testimony by the victim. She testified that she was raped by appellant, in his bedroom, while she was residing with him in Danbury Township, Ottawa County, Ohio, during the fall or winter months in late 2004 through early 2005. She further testified that during the same time frame, just days after the previous encounter, appellant again raped her, but this time in her bedroom. Finally, she testified that in the spring of 2005, appellant raped her in the shed behind the house located in Danbury Township, Ottawa County, Ohio.

{¶ 20} In addition to testimony by the victim, the state introduced a substantial amount of corroborating evidence as to venue, including property records showing that the home in question was owned by appellant from 2001 until November 15, 2005, and authenticated school records for the victim, which indicate that she was enrolled in Danbury schools until the fall of 2005. In addition, testimony by the victim's aunt established that she lived with the victim and appellant in Danbury Township from 2002 through the fall of 2005. We find that the foregoing constitutes ample evidence to establish venue in this case.

9.

{¶ 21} Next, we examine appellant's claim that there was insufficient evidence to establish the elements of rape. Specifically, appellant claims that there was insufficient evidence to establish the element of "sexual conduct" as to each of the five counts. Regarding the first two counts, the victim testified that appellant raped her by way of fellatio, in his bedroom, in the winter of 2004. She described in detail about how appellant invited her to stay up past her bedtime and invited her into his bed, and that when she asked him what his penis was, he told her to that she was supposed to lick it to express her love. She testified that she did kiss it and lick it and that she thought it was gross to be kissing something she just licked. She explained that she asked him to watch her, and that he eventually climaxed. The victim testified that after the fellatio was concluded, appellant told her it was her turn, and he performed cunnilingus on her. In addition, the victim stated that she remembered certain details, including that her feet were cold, and that appellant's bed was a water bed.

{¶ 22} With respect to counts three and four, the victim testified that just days after the first two rapes, appellant came into her bedroom to read her a bedtime story, and then made her perform fellatio on him, after which he performed cunnilingus on her. She further testified that the abuse lasted approximately 15 to 20 minutes, and that, on this occasion, appellant did not climax.

{¶ 23} Regarding count five, the victim testified that during the spring of 2005, while she was at the Danbury Township home, she went outside to look for appellant in the shed. She explained that when she found him, he told her a story about having gotten

10.

different chemicals to burn off his body hair, and that he then attempted to rape her with his penis. She further stated that while his attempt to rape her with his penis was unsuccessful, because he suffered from erectile dysfunction, he did digitally penetrate her with his finger and that when he did so it hurt. She testified that the incident lasted for about 15 minutes, after which she went in and got cleaned up. She said that she did not tell anyone about the incident, because she was scared.

{¶ 24} The foregoing was direct testimony from an eyewitness and victim regarding each of the five counts. In addition to the basic facts, the victim recalled a substantial number of specific details related to those counts. There was also substantial amount of corroborating evidence, including appellant's confession. In the video, appellant can be seen and heard telling the victim that he is sorry that he molested her, that he never meant to hurt her, that he does not really know why he did it, and that he has never done it to anyone else. In the text messages, appellant responds to the victim's accusations of rape by saying that he is "so so sorry" and that he never meant to hurt her.

{¶ 25} Appellant argues that "[o]nce the Court permitted the victim's testimony, letters, and journal entries describing years of events, the trial was turned into a referendum on years of conduct rather than a trial of specific acts[;] [a]s a result, the jury lost their way and convicted Mr. Rose based on an alleged lifetime of misdeeds rather than specific instances of Rape." In response to this argument, the state notes that the journal entries and letters to which appellant refers were introduced without objection by the defense at trial, and, further, that two of those journal entries and letters were offered

11.

as defense exhibits.  A review of the record reveals that the state took great pains to ensure that the jury knew the specific conduct by the defendant that related to each of the five charges.  During the state's opening, the state explained in detail each charge, each element of those charges, and the facts that were alleged to have constituted each of the five offenses.  The state reviewed the same material in closing. It is clear from the record that there was sufficient evidence to support a conviction on each and every one of the five charges.

{¶ 26} Viewing the evidence in a light most favorable to the state, we find that there was sufficient evidence to find appellant guilty of all five counts.  Accordingly, appellant's assignment of error is found not well-taken, and we affirm the judgment of the trial court.  Appellant is ordered to pay the costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.         

                                         
_____
JUDGE

Christine E. Mayle, J.        

_____
Myron C. Duhart, J.               
JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.