Bridget PAVESE, Appellant–Plaintiff,

v.

CLEANING SOLUTIONS,
Appellee–Defendant.

No. 93A02–0803–EX–284.

Court of Appeals of Indiana.

Sept. 30, 2008.

Thomas N. Logan, Sean M. Persin, Withered Burns & Persin, LLP, Lafayette, IN, Attorneys for Appellant.

Paul T. Fulkerson, Skiles Detrude, Indianapolis, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

After the Indiana Supreme Court in *Milledge v. The Oaks,* 784 N.E.2d 926 (Ind. 2003), adopted the positional risk doctrine that placed the burden of proof on employers in cases involving neutral risks, the Indiana General Assembly amended Indiana Code § 22–3–2–2(a) to place the burden of proof on employees throughout the proceedings. In this case, Bridget Pavese fell on the job and received medical treatment for a head injury. Her employer, Cleaning Solutions, refused to pay her medical bills. Pavese now appeals the decision of the full Worker's Compensation Board affirming the decision of a hearing member, who concluded that she experienced a personal event on the job that is not covered by the Worker's Compensation Act. Specifically, Pavese contends that the amendment to Indiana Code § 22–3–2–2(a) is unconstitutional as applied to her because it places on her the burden of proving a negative, that is, that her injury is not the result of a personal health condition. In the event we find the amendment constitutional, Pavese asserts that she has nevertheless met her burden of proof. Concluding that Pavese has not met her burden of proving that the amendment to Indiana Code § 22–3–2–2(a) is unconstitutional and that she also has not met her burden of proving that her injury arose out of her employment, we affirm.

### Facts and Procedural History

Pavese was employed as a custodial worker for Cleaning Solutions. Cleaning Solutions placed her at a gas company in Lafayette, Indiana. Part of Pavese's responsibilities at the gas company included cleaning the garage floor where the trucks parked. First, Pavese dusted the floor. Then, she used a machine to scrub the floor with water and a cleaning solution.

On February 22, 2006, Pavese clocked in and began her work shift as usual. She "dust mopped the floor" and put away the dust mop. Appellant's App. p. 47. Empty handed, she then walked back to retrieve the scrubbing machine. Approximately ten to fifteen minutes later, co-workers found her unconscious on the floor and called 911. The next thing Pavese recalls is waking up in an ambulance. She does not remember the events leading up to her fall. According to Pavese, the floor, which was concrete, was "slick" because there was often oil and water on it. *Id.* at 48.

Pavese was taken to the emergency room at Home Hospital in Lafayette and spent one night there. Pavese's treating physician, Dr. R. Michael Holmes, noted that Pavese fell backwards, causing a laceration to the back of her scalp and a concussion with retrograde amnesia. Dr. Holmes attempted to rule out any preexisting conditions that may have caused her fall and noted the following: (1) no history of fainting, dizziness, or lightheaded spells; (2) no history or evidence of seizures; (3) a normal EKG in the emergency room; (4) a normal CT scan of the brain, except for the right posterior scalp hematoma in the emergency room; and (5) a normal/negative drug test in the emergency room. *Id.* at 57–60. Dr. Holmes' discharge diagnosis was "syncopal episode, etiology uncertain," [1] and his impression was that the

---

1. "Syncope"
 is defined as a transient self-limited loss of consciousness, usually leading to a fall. It is a subset of a broader range of conditions causing transient loss of consciousness. Syncope is a common medical problem ac-
 counting for up to 1% of emergency department visits and is the sixth leading cause of hospitalization for people older than 65 years.... Primary care physicians, cardiologists, and emergency department physi-

sudden onset without warning "would suggest the possibility of cardiac rhythm disturbance, which needs to be evaluated." *Id.* at 59. As such, Dr. Holmes ordered Pavese to wear a Holter monitor and perform a tilt table test, both of which were normal. At both February 28, 2006, and March 28, 2006, follow ups, Dr. Holmes' diagnoses remained "Syncopal episode." *Id.* at 120, 146. At a May 11, 2006, follow up, however, Pavese questioned whether her fall was occupationally related, and Dr. Holmes responded that he "could not rule out [Pavese] slipping on the concrete floor, which in turn, led to the fall backward in which she struck her occipital scalp and sustained a concussion for which she has retrograde amnesia and is unable to remember the reason for the fall." [2] *Id.* at 118. Dr. Holmes' diagnosis in the follow up note for this visit was "Questionable syncopal episode (unproven)." *Id.* at 145.

On May 18, 2006, Pavese filed an Application for Adjustment of Claim with the Indiana Worker's Compensation Board alleging that she sustained an injury to her head on February 22, 2006, while working for Cleaning Solutions. A hearing was held on September 6, 2007. At the hearing, the parties stipulated to the following facts: Pavese was working for Cleaning Solutions on the date in question, did not know what happened, and next recalled waking up in an ambulance; Pavese received medical treatment in February 2006 for her head injury; Cleaning Solutions denied her claim as non-compensable; and Pavese, who suffered no compensable disability and did not have any permanent

impairment from the accident, seeks only medical expenses. In addition, Pavese testified at the hearing, and her medical records were admitted into evidence. On October 1, 2007, a single hearing member of the Worker's Compensation Board entered the following Findings and Conclusion:

1. On February 28, 2006, Plaintiff experienced an unexplained syncopal episode and resulting concussion and laceration of her scalp, as explained by the doctors who treated her.

2. Plaintiff testified the floor at work was slick sometimes, with oil and/or water on it. However, on the night of her fall, Plaintiff was replacing dust mops after using them, not rags or a wet mop. Plaintiff did not point to anything on the floor which could have caused her to trip or fall. She was alone at work at the time and remembers nothing of the incident until she awoke in the ambulance.

3. Plaintiff has failed to sustain her burden of proving an accidental injury in the course and scope of her employment. Rather, it appears Plaintiff experienced a wholly personal event, which while unexplained, would not make the Defendant liable under the Worker's Compensation Act for her medical care.

*Id.* at 13.

Thereafter, Pavese appealed to the full board. On February 28, 2008, the full board, apparently adopting the single hearing member's findings and conclusion, affirmed the single hearing member by a 5–2 margin.[3] Pavese now appeals.

cians frequently encounter patients with syncope.
eMedicine, Syncope, http://www.emedicine.com/MED/topic3385.htm (last visited Sept. 4, 2008). Pavese was forty-six years old at the time of the hearing in this case.

2. It appears that Pavese's last follow up with Dr. Holmes was October 4, 2006, and this

appointment was primarily for litigation purposes. There is nothing in the progress note indicating Dr. Holmes' final opinion as to the cause of Pavese's fall.

3. We note that the full board did not issue its own findings. In its order, the full board affirmed the single hearing member. *See* Appellant's App. p. 33–34. Because the full

## Discussion and Decision

 Pavese contends that Indiana Code § 22–3–2–2(a), which was amended in 2006 after the Indiana Supreme Court's 2003 opinion in *Milledge v. The Oaks* is unconstitutional as applied to her because it places on her the burden of proving a negative, that is, that her injury is not the result of a personal health condition.[4] In the event we find the statute constitutional, Pavese asserts that she has nevertheless met her burden of proof.

 When reviewing the decision of the Worker's Compensation Board, we do not reweigh the evidence or judge the credibility of witnesses. Rather, we determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Worker's Compensation Board's findings and conclusions. *Bertoch v. NBD Corp.*, 813 N.E.2d 1159, 1160 (Ind.2004). The Worker's Compensation Board's conclusions of law are reviewed *de novo. Id.*

 The Worker's Compensation Act authorizes the payment of compensation to employees for "personal injury or death by accident arising out of and in the course of the employment." Ind.Code § 22–3–2–2(a). An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Milledge,* 784 N.E.2d at 929. An accident occurs "in the course of" employment when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto. *Id.* Both requirements must be met before compensation is awarded, and neither alone is sufficient. *Id.* The person who seeks worker's compensation benefits bears the burden of proving both elements. *Id.*

 There is no question that the injury Pavese sustained in this case occurred in the course of her employment. She fell while walking to retrieve the scrubbing machine so that she could clean the floor. Rather, the question is whether Pavese's injury arose out of her employment. A nexus is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment or when the facts indicate a connection between the injury and the circumstances under which the employment occurs. *Id.* The Indiana Supreme Court explained in *Milledge* that risks incidental to employment fall into three categories:

board is required by statute to enter findings of fact, we presume the full board adopted the single hearing member's findings of fact. *See* Ind.Code § 22–3–4–7 ("the full board ... shall make an award and file the same with the finding of the facts on which it is based and send a copy thereof to each of the parties in dispute...."); *Rork v. Szabo Foods*, 436 N.E.2d 64, 67 (Ind.1982) ("It is the Full Industrial Board's opinion which the legislature has required; the requirement that the seven members of the Board enumerate their findings of fact is a prophylactic measure against arbitrary or hastily drawn decisions [by the single hearing member], as we explained in *Perez v. United States Steel Corporation* (1981) Ind., 426 N.E.2d 29, 32.").

4. Cleaning Solutions argues that Pavese has waived this argument for failing to raise it below. However, the constitutionality of a statute may be raised at any stage of a proceeding. *Morse v. State,* 593 N.E.2d 194, 197 (Ind.1992). Although Cleaning Solutions cites to *Endres v. Indiana State Police,* 809 N.E.2d 320, 322 (Ind.2004), and other cases for the proposition that appellate courts should decline to address constitutional issues where the record is not developed in the lower court, these cases are distinguishable. Specifically, in these cases, the parties argued that their constitutional rights were violated, not that a statute was unconstitutional.

(1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) risks neither distinctly employment nor distinctly personal in character. *Id.* at 930 (citing 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* 4–1 (2002)). "Risks in category number one are those we intuitively think of as work connected," risks in category number two are those "caused by a pre-existing illness or condition, unrelated to employment," and risks in category number three are "neutral risks." *Id.* at 930. While risks in categories one and three are generally compensable under the Worker's Compensation Act, risks personal to the claimant are not. *Id.*

Our Supreme Court acknowledged that courts had taken three approaches when addressing the "arising out of" element in unexplained fall cases and ultimately adopted the "positional risk doctrine." *Id.* at 931. By adopting this doctrine, our Supreme Court refused to place employees in the position of attempting to prove a negative and instead shifted the burden of proof to employers when the employee has shown that her injury occurred in the course of employment and was the result of a neutral risk. *Id.* at 931, 933–34. The Court held that unexplained accidents are classified as neutral risks and that "the positional risk doctrine is the appropriate analytical tool for resolving questions concerning injuries that result from neutral risks." *Id.* at 932, 933–34. The Court explained the operation of this doctrine as follows:

> Under [the positional risk] doctrine, an injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed [the] claimant in the position where he was injured. This but for reasoning is the foundation of the positional risk doctrine, under which if the "in the course of" employment ele-

ment is met, then there is a rebuttable presumption that the injury "arises out of" employment.... [T]he burden is [then] on the employer to demonstrate that the injury was actually the result of a cause personal to the claimant.

*Id.* at 931 (quotation omitted).

However, three years after *Milledge,* in 2006, the Indiana General Assembly amended Indiana Code § 22–3–2–2 to add the following two sentences to the end of subsection (a):

> The burden of proof is on the employee. The proof by the employee of an element of a claim does not create a presumption in favor of the employee with regard to another element of the claim.

P.L. 134–2006, Sec. 3. According to Cleaning Solutions, this amendment overrules *Milledge*'s positional risk doctrine, which shifted the burden to employers in cases involving neutral risks, by keeping the burden of proof on employees throughout the proceedings. Pavese appears to concede this. She argues, however, that this is unconstitutional because it denies her due course of law pursuant to Article I, Section 12 of the Indiana Constitution, which provides, in pertinent part: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law."

Although this issue has never been addressed by this Court or our Supreme Court, we agree with the parties that the 2006 amendment to Indiana Code § 22–3–2–2(a) has effectively overruled *Milledge*'s 2003 positional risk doctrine by placing the burden of proof on employees throughout worker's compensation proceedings. The language of the amendment is clear: "The burden of proof is on the employee. The proof by the employee of an element of a claim does not create a presumption in

favor of the employee with regard to another element of the claim." P.L. 134–2006, Sec. 3.

The question then becomes whether this amendment is constitutional. Pavese asserts that the amendment violates Article I, Section 12. Other than quoting this provision of the Indiana Constitution and alleging that it "prevents [her] from due process of law and places on her a burden that she cannot meet," Pavese presents no analysis whatsoever of this issue. *See* Appellant's Br. p. 10. We "presume that statutes are constitutional until that presumption is overcome by a contrary showing." *Colen v. Ohio County,* 890 N.E.2d 1, 6 (Ind.Ct.App.2008) (quotation omitted). "The burden is on the party challenging the constitutionality of the statute, and all doubts are resolved against that party." *Id.* (quotation omitted). By presenting no analysis, Pavese has waived this issue and has simply not met her burden of proving that the amendment to Indiana Code § 22–3–2–2(a) is unconstitutional. *See* Ind. Appellate Rule 46(A)(8)(a).

Notwithstanding Pavese's waiver of this issue, we observe that the Indiana General Assembly enacted the Worker's Compensation Act to provide compensation to workers suffering from work-related injuries without meeting the liability requirements of tort law. *Milledge,* 784 N.E.2d at 932–33. Before the 2006 amendment to Indiana Code § 22–3–2–2(a), case law, including *Milledge,* already provided that employees bore the burden of proving that their injury arose out of and in the course of their employment. *Milledge,* 784 N.E.2d at 929 (citing *Conway v. Sch. City of E. Chi.,* 734 N.E.2d 594, 598 (Ind.Ct.App.2000), *trans. denied*); *see also Glenn v. Bd. of Comm'rs, Harrison County, Ind.,* 552 N.E.2d 485, 487 (Ind.Ct.App.1990) ("It is the claimant's burden in the first instance to prove his right to compensation."). After our Supreme Court in *Milledge* examined the three approaches for cases involving neutral risks and selected the burden-shifting approach, the legislature stepped in to clarify that employees maintained the burden throughout the proceedings. This was the legislature's prerogative, as the right to worker's compensation is a creature of statute. There is nothing in *Milledge* indicating that the positional risk doctrine was constitutionally mandated.. Indeed, had it so desired, the *Milledge* Court could have selected from two other approaches that left the burden of proof with employees. *See id.* at 931. Pavese's constitutional challenge to the 2006 amendment to Indiana Code § 22–3–2–2(a) thus fails.

We therefore proceed to address whether Pavese has met her burden of proving that her injury arose out of her employment. As explained above, an injury "arises out of" employment when a causal nexus exists between the injury and the duties or services performed by the injured employee. *Id.* at 929. The single hearing member found that Pavese, who was walking across a floor which was not yet wet, fell, experienced amnesia, and was diagnosed with an unexplained syncopal episode. As such, the member concluded that Pavese's injury was due to a personal risk and was not covered by worker's compensation. Pavese argues that these findings are not supported by the evidence.

Pavese's diagnosis at the time she was discharged from the hospital was "Syncopal episode, etiology uncertain." Appellant's App. p. 57. Because of the sudden onset without warning, Dr. Holmes was concerned about cardiac rhythm disturbance. He ordered Pavese to undergo two heart tests, both of which were normal. At both February 28, 2006, and March 28, 2006, follow ups, Dr. Holmes' diagnoses

remained "Syncopal episode." *Id.* at 120, 146. At a May 11, 2006, follow up, however, Pavese questioned whether her fall was occupationally related, and Dr. Holmes responded that he "could not rule out [Pavese] slipping on the concrete floor, which in turn, led to the fall backward in which she struck her occipital scalp and sustained a concussion for which she has retrograde amnesia and is unable to remember the reason for the fall." *Id.* at 118. Dr. Holmes' diagnosis in the follow up note for this visit was "Questionable syncopal episode (unproven)." *Id.* at 145.

In addition, Pavese testified at the hearing before the single hearing member that she was walking to retrieve the scrubbing machine when she fell. The following exchange then occurred:

Q: Okay. Can you describe what the floor is like in the garage. Is it a concrete floor?

A: Uh-huh. It's a concrete floor.

Q: Is it painted?

A: Uh, no.

Q: Do they have like a rubber mat on it or anything?

A: No.

Q: Okay. Is it slick?

A: Yes.

Q: Is it slick even when it's dry?

A: Well, there's water, there's oil. It's slick.

*Id.* at 47–48.

We hold that Pavese has failed to meet her burden of proving that her injury arose out of her employment. This is because Pavese has presented us with two possibilities for her fall—syncopal episode (which is a personal risk not covered by worker's compensation) and slipping on the floor (which is a neutral risk generally covered by worker's compensation). Although we sympathize with the position Pavese is in, the legislature has made a policy decision to keep the burden of proof on employees. Because two grounds exist for Pavese's fall and Pavese bears the burden of proof, we affirm the full board's decision that Pavese experienced an unexplained syncopal episode, which means that she experienced a personal event and her injuries are not compensable under the Worker's Compensation Act.

Affirmed.

KIRSCH, J., and CRONE, J., concur.