# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**CARLA R. HOUNSHEL**
**R. JAY TAYLOR, JR.**
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**EDWARD C. LAWHEAD**
Schreiner, Malloy & Etzler, P.C.
Highland, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| A PLUS HOME HEALTH CARE INCORPORATED, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1207-EX-558 |
| | ) | |
| KATHLEEN MIECZNIKOWSKI, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM INDIANA WORKER'S COMPENSATION BOARD
Case No. C-211964

**December 14, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

A Plus Home Health Care, Inc. ("A Plus") appeals the decision of the Indiana Worker's Compensation Board ("the Board") in favor of Kathleen Miecznikowski ("Kathy") on her claim for worker's compensation. A Plus raises a single issue for our review, namely, whether Kathy's claim arose out of her employment. We affirm.

**FACTS AND PROCEDURAL HISTORY**

On August 27, 2011, Kathy worked for A Plus as a home health care registered nurse. While visiting a patient at the patient's home, Kathy realized that she had left some medical equipment in her car, and she returned to her car to retrieve the equipment. On her way back inside the patient's house, Kathy lost her footing and fell on a concrete sidewalk, injuring her left arm and hand.

On September 8, Kathy filed her original application for adjustment of claim with the Board, which she later amended. Kathy's application was heard by a Single Hearing Member ("SHM") on December 1. Following that hearing, on January 20, 2012, the SHM concluded that Kathy's injuries did not arise out of her employment. In particular, the SHM acknowledged Kathy's evidence that she had not fallen due to a mental illness or condition and further credited her statement that she had simply lost her own footing. But the SHM then found that Kathy's "own description of the cause of her fall indicates it was of a personal nature . . . ." Appellant's App. at 6. Accordingly, the SHM denied her claim.

Kathy appealed the SHM's determination to the full Board. The Board held a hearing on May 14, after which the Board concluded that Kathy's injuries had arisen out

2

of her employment with A Plus. Specifically, the Board concluded that "[Kathy's] fall was a neutral risk and therefore compensable. There is no indication [Kathy] had a personal condition that caused her to fall." Id. at 27. This appeal ensued.

## DISCUSSION AND DECISION

A Plus contends that the Board erred as a matter of law when it determined that Kathy's injuries arose out of her employment with A Plus.[1] As our supreme court has discussed:

> On appeal, we review the decision of the Board, not to re-weigh the evidence or judge the credibility of witnesses, but only to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions. Where the question before this Court, however, is primarily a legal question, we do not grant the same degree of deference to the Board's decision, for law is the province of the judiciary and our constitutional system empowers the courts to draw legal conclusions. Moreover, in performing a legal analysis and in interpreting the provisions of the Worker's Compensation Act, we construe the Act and resolve doubts in the application of terms in favor of the employee so as to effectuate the Act's humanitarian purpose to provide injured workers with an expeditious and adequate remedy.

Walker v. State, 694 N.E.2d 258, 266 (Ind. 1998) (citations and footnote omitted).

The Indiana Worker's Compensation Act provides for compensation of injury or death by accident arising out of and in the course of employment. Ind. Code § 22-3-2-2; Wright Tree Serv. v. Hernandez, 907 N.E.2d 183, 186 (Ind. Ct. App. 2009), trans. denied. The claimant bears the burden of proving the right to compensation. Wright Tree Serv., 907 N.E.2d at 186. As a general rule, "the issue of whether an employee's injury or

---

[1] A Plus does not dispute that Kathy's injuries occurred in the course of her employment with A Plus.

3

death arose out of and in the course of his or her employment is a question of fact to be determined by the Board." Id. at 186-87.

"An injury 'arises out of' employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee." Milledge v. The Oaks, 784 N.E.2d 926, 929 (Ind. 2003), superseded on other grounds by I.C. § 23-3-2-2 (2006). The "nexus is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment . . . ." Id. (citing Wine-Settergren v. Lamey, 716 N.E.2d 381, 389 (Ind. 1999)).

The risks incidental to employment fall into three categories: (1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) risks neither distinctly employment nor distinctly personal in character. Id. at 930. "Risks that fall within categories numbered one and three are generally covered under the Indiana Worker's Compensation Act." Id. However, risks personal to the claimant, those "caused by a pre-existing illness or condition unrelated to employment," are not compensable. Id. (citing Kovatch v. A.M. Gen., 679 N.E.2d 940, 943 (Ind. Ct. App.1997), trans. denied). With respect to injuries resulting from workplace falls in particular, the Indiana Supreme Court and this court have noted:

> Workplace falls can result from either an employment, personal[,] or neutral risk, or from a combination thereof. Some falls clearly result from risks personal to the employee; that is, they are caused by a pre-existing illness or condition, unrelated to employment. As a general matter, these "idiopathic" falls are not compensable. In contrast, some falls are "unexplained" in that there is no indication of causation. Most jurisdictions compensate such falls, classifying them as neutral risks.

Id. at 931 (citing Kovatch, 679 N.E.2d at 943).

4

Here, A Plus contends that, because the Board concluded that Kathy's injuries arose from a neutral risk, the Board's conclusion is necessarily premised on the now-defunct "positional risk doctrine" described by our supreme court in Milledge. Under that doctrine, when injuries resulted from neutral risks and occurred in the course of employment, a presumption was triggered that the injury also arose out of the employment and the burden then shifted to the employer to prove that the injury was the result of a risk personal to the claimant. Id. at 931. In Milledge, our supreme court imposed the positional risk doctrine to avoid placing claimants in the position of attempting to prove a negative, namely, that the injury was not personal to the claimant. See Pavese v. Cleaning Solutions, 894 N.E.2d 570, 576 (Ind. Ct. App. 2008).[2]

However, three years after Milledge, the General Assembly amended Indiana Code Section 23-3-2-2 to add the following language: "The burden of proof is on the employee. The proof by the employee of an element of a claim does not create a presumption in favor of the employee with regard to another element of the claim." As this court first recognized in Pavese, that amendment "overrule[d] Milledge's positional risk doctrine . . . by keeping the burden of proof on the employees throughout the proceedings." Id.; see also Waters v. Ind. State Univ., 953 N.E.2d 1108, 1114 n.2 (Ind. Ct. App. 2011) (recognizing that the statutory amendment rendered the positional risk doctrine defunct), trans. denied.

---

[2] We note that Westlaw has "red flagged" Pavese as "no longer good law," with the comment that it has been "superseded by statute as stated in Waters v. Indiana State University." In Waters, we stated: "In Pavese, another panel of this court recognized that the amendment overruled the positional risk doctrine adopted by our supreme court in Milledge. 894 N.E.2d at 576." Waters v. Ind. State Univ., 953 N.E.2d 1108, 1114 n.2 (Ind. Ct. App. 2011), trans. denied. Nothing in that statement can reasonably be read to suggest that Pavese, rather than the positional risk doctrine in Milledge, was superseded by the 2006 statutory amendment. Pavese is good law.

However, contrary to A Plus's arguments on appeal, the 2006 amendment to Indiana Code Section 23-3-2-2 did not supersede either our supreme court's description of the three types of risks, see, e.g., Ind. Mich. Power Co. v. Roush, 706 N.E.2d 1110, 1114 (Ind. Ct. App. 1999), trans. denied, or the court's conclusion that neutral risks are compensable under the Act, see Milledge, 784 N.E.2d at 930-31.[3]  Indeed, after recognizing the effect of the 2006 statutory amendment in Pavese, this court went on to hold that the claimant could not succeed in her application for worker's compensation because the evidence she had presented in support of her claim equally showed that her injuries had resulted from either a personal risk or a neutral risk.  894 N.E.2d at 578.  And since the 2006 statutory amendment neither this court nor the Indiana Supreme Court has concluded that neutral risks are no longer compensable under the Act.

Unlike the factual scenario in Pavese, here Kathy presented evidence that her injuries were not the result of a mental illness or condition—and, therefore, were not the result of a personal risk—and additionally stated that her injuries were the result of her losing her footing—and, therefore, were the result of a neutral risk.  In particular, Kathy stated that she "didn't get dizzy or lightheaded or anything . . . .  It was just one of those things where I was just walking and I just fell[] and, you know, just lost my footing."  Appellant's App. at 5.  Further, A Plus stipulated to the SHM that Kathy's fall was caused by her tripping.  Id. at 3.  In light of the undisputed evidence, we agree with the

---

[3]  Because A Plus's arguments on appeal are premised on its overly broad reading of the 2006 amendment to Indiana Code Section 23-3-2-2, the case law relied on by A Plus focuses on risks distinctly associated with employment rather than neutral risks.  Accordingly, many of the cases cited by A Plus are inapposite.

Board's conclusion that "[Kathy's] fall was a neutral risk and therefore compensable." Id. at 27.

A Plus's argument that this conclusion necessarily relies on the positional risk doctrine is incorrect. At all times, pursuant to the 2006 amendment to Indiana Code Section 23-3-2-2, Kathy bore the burden of proof on all elements of her claim. Kathy met her burden, unlike the claimant in Pavese, when she testified that the cause of the fall was both not a personal risk and also was a neutral risk.

A Plus further contends that the Board erred because a risk is incidental to employment only "if the risk is not one to which the public at large is subjected." Appellant's Br. at 7. A Plus continues that "[t]here is simply no evidence that [Kathy's] job responsibilities increased her risk of falling . . . ." Id. at 10. It is true that injuries arising from risks distinctly associated with the employment are compensable; but, as discussed by our supreme court in Milledge, it is not true that injuries arising only from such risks are compensable. Injuries arising from neutral risks are also compensable. Milledge, 784 N.E.2d at 930.

A Plus dismisses Ohlinger Construction Co. v. Mosbey, 427 N.E.2d 910 (Ind. Ct. App. 1981), to the extent it applies the positional risk doctrine as "no longer good law." Reply Br. at 6. In so doing, A Plus confuses the positional risk doctrine with the neutral risk doctrine and misconstrues the reach of the 2006 amendment to Indiana Code Section 23-3-2-2. The statutory amendment abrogated the positional risk doctrine, but it did not eliminate the neutral risk doctrine. A Plus's argument would exclude an entire class of employees from potential coverage, the so-called "traveling employees" whose place of

7

employment changes from hour to hour or day to day. See Ohlinger Constr. Co., 427 N.E.2d at 912. The 2006 amendment does not reflect such an intent by our legislature.

Finally, A Plus argues that the Board erroneously conflated the "in the course of" and "arising out of" requirements under the Worker's Compensation Act. Appellant's Br. at 12. We cannot agree. A Plus's argument on this issue is based on the admittedly "slender" connection of neutral risks to employment, but the Board's conclusion here was squarely based on the neutral-risk principle of Milledge. As our supreme court explained:

> We acknowledge, as has the Court of Appeals, that neutral risks present risk of loss problems. This is so because the risk does not fall clearly upon the employer or the employee. Responding to the question of who should bear this risk, Professor Larson observes:
>
>> [T]he usual answer in the past has been to leave this loss on the employee, on the theory that he or she must meet the burden of proof of establishing affirmatively a clear causal connection between the conditions under which the employee worked and the occurrence of the injury. More recently, some courts have reasoned in the following vein: Either the employer or the employee must bear the loss; to show connection with the employment, there is at least the fact that the injury occurred while the employee was working; to show connection with the employee there is nothing; therefore, although the work connection is slender, it is at least stronger than any connection with the claimant's personal life.

Milledge, 784 N.E.2d at 932 (citations omitted; alteration original). Thus, once the claimant meets her burden of proof to show that her injuries did not result from a personal risk and did result from a neutral risk, she will have shown that her claim arose out of her employment.

8

Kathy's evidence submitted to the SHM and credited by both the SHM and the Board demonstrated that her injuries both did not arise from a personal risk and did arise from a neutral risk. Because the injuries arose from a neutral risk, they were incidental to Kathy's employment and, therefore, compensable. Id. at 929-31. Accordingly, we affirm the Board's decision in favor of Kathy.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.