## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 28 2015, 9:17 am

*Kevin S. Smith*

**CLERK**
of the supreme court, court of appeals and tax court

---

ATTORNEYS FOR APPELLANT

Donald S. Smith
Laura S. Reed
Phillip Olsson
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Neil E. Gath
Gath Law Office
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Performance Contracting, Inc.,

*Appellant-Defendant,*

v.

Randy Lowe,

*Appellee-Plaintiff*

July 28, 2015

Court of Appeals Case No. 93A02-1502-EX-98

Appeal from the Indiana Workers' Compensation Board

The Honorable Linda Hamilton, Chairperson

Cause No. C-222070

**Bailey, Judge.**

# Case Summary

[1] Performance Contracting, Inc. ("PCI") appeals an order of the Full Worker's Compensation Board of Indiana ("the Board"), affirming the Single Hearing

Member's ("the Single Member") decision whereby Randy Lowe ("Lowe") was awarded compensation upon his claims for temporary total disability and medical expenses. PCI presents a single, consolidated issue: whether the Board erred as a matter of law by concluding that Lowe's injuries arose out of his employment, as opposed to arising from a personal risk incidental to his employment. We affirm.

# Facts and Procedural History

[2] Lowe was injured in a fall on August 22, 2013 but was denied worker's compensation benefits. On September 16, 2013, Lowe filed his Application for Adjustment of Claim. A hearing was conducted before the Single Member on April 24, 2014. The parties stipulated that, on August 22, 2013, Lowe had been employed by PCI when he "fell through the floor of a capped off smokestack and landed about 30 feet below, injured multiple body parts." (App. at. 4.)

[3] The Single Member made the following relevant factual findings:

1. Plaintiff worked for Defendant as a union laborer. Defendant was contracted to provide services at American Energy Power ("AEP"), a power plant, in Lawrenceburg, Indiana.

2. On the date of Plaintiff's accident he was assigned to clean Unit 1 at AEP. Plaintiff was cleaning several flights of stairs prior to the incident.

3. Plaintiff struck the stairs to knock the dirt and dust off of the railings of the staircases with a hand broom as he proceeded up the steps. When Plaintiff reached the top of the stairs he went out onto the roof to wait for the dust to settle because it was thick and difficult to breathe.

4. Plaintiff was working with a co-worker on this date, Jason Cox. Both employees went out on to the roof. The employees did not want to be seen not working while they were waiting for the dust to settle so they proceeded to an abandoned smoke stack on the roof. Defendant had instructed its employees that they should not be seen by plant management if they were not actively engaging in work activities.

5. The smoke stack that the employees entered had been abandoned and capped off so that debris did not get into the plant from the opening in the smoke stack.

6. The area in the smoke stack had been used as a makeshift break area based on the evidence from the scene. The area had significant debris including pop cans, cigarette butts, food wrappers, and blankets. It is more likely than not that Defendant and/or the plant management knew that employees used the smoke stack in this manner and acquiesced. Going into the smoke stack to wait for the dust to settle was part of Plaintiff's routine when cleaning this particular Unit. Plaintiff went into the area at least one time per week when cleaning Unit 1. Plaintiff had been in the smoke stack with at least four (4) other of Defendant's employees.

7. John Folke, who had done work at the AEP plant, credibly testified that it was general knowledge that people went into the smoke stack, yet neither Defendant nor AEP had made any effort to restrict the area. Cory Walston, Plaintiff's foreman, testified that the roof was an accessible area and anyone could go up there.

8. Plaintiff was never instructed not to go into the smoke stack and there were no signs stating that the area was restricted. The report from Rimkus Consulting Group noted that this area was restricted but this is not consistent with the testimony and evidence presented at the hearing.

9. Jason Cox and Plaintiff were waiting in the smoke stack for the dust to settle in the plant when the floor collapsed and Plaintiff fell thirty (30) feet to the floor below.

10. Plaintiff was severely injured in the fall, including a fractured hip, fractured pelvis, injuries to his head, ribs, hand, lower back, and right shoulder.

(App. at 5-6.)  The Single Member concluded:

> Plaintiff was injured by accident in the course of and arising out of his
> employment with the Defendant.  Plaintiff was avoiding the dust in
> the plant as part of his cleaning duties when he went into the smoke
> stack, which was not a restricted area.  Plaintiff was acting consistent
> with the direction not to be seen by plant management while he was
> not actively engaging in his duties.  Accordingly, Plaintiff's accident
> occurred in the course of and arising out of his employment with
> Defendant.

(App. at 7.)  PCI sought review before the Board and, on February 20, 2015, the decision of the Single Member was adopted by the Board, with the addition of the following language:

> The Full Board further finds that Plaintiff had not been directed that he
> could not be on the roof or in the smoke stack.  Plaintiff was in a place
> he could reasonably be expected to be based on the totality of the
> evidence, including Defendant's inaction when the evidence presented
> indicated that employees had been in the area where Plaintiff's injury
> occurred on a frequent basis.

(App. at 11.)  This appeal ensued.

# Discussion and Decision

## *Standard of Review*

An appellant faces a deferential standard of review when challenging the Board's findings.  *Niegos v. ArcelorMittal Burns Harbor LLC*, 940 N.E.2d 323, 325 (Ind. Ct. App. 2010).  This Court is bound by the Board's findings of fact and may consider only errors in the Board's conclusions of law.  *Id.*  However, we may disturb the Board's factual determinations if we conclude that the evidence

is undisputed and leads inescapably to a result contrary to that reached by the Board. *Id.*

[5] We do not reweigh evidence or judge the credibility of witnesses, but determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions. *Bertoch v. NBD Corp.,* 813 N.E.2d 1159, 1160 (Ind. 2004). In so doing, we employ a two-tiered standard of review: we review the record to determine if there is any competent evidence of probative value to support the Board's findings, and we then examine the findings to see if they are sufficient to support the decision. *Wholesalers, Inc. v. Hobson*, 874 N.E.2d 622, 627 (Ind. Ct. App. 2007). To prevail, the appellant must demonstrate that there was no probative evidence from which the Board might reasonably conclude as it did. *Niegos*, 940 N.E.2d at 325-26. To the extent that an issue involves a conclusion of law based on undisputed facts, it is reviewed de novo. *DePuy, Inc. v. Farmer*, 847 N.E.2d 160, 164 (Ind. 2006).

## *Injury Arising out of Employment*

[6] The Indiana Worker's Compensation Act ("the Act") provides compensation for personal injury or death by accident arising out of and in the course of employment. Ind. Code § 22-3-2-2. The claimant bears the burden of proving his right to compensation and, as a general rule, "the issue of whether an employee's injury or death arose out of and in the course of his or her

employment is a question of fact to be determined by the Board." *Wright Tree Service v. Hernandez*, 907 N.E.2d 183, 186-87 (Ind. Ct. App. 2009), *trans. denied*.

[7] For an injury to arise out of employment and thus be compensable, there must be a causal connection between the injury and employment. *Burdette v. Perlman-Rocque Co.*, 954 N.E.2d 925, 930 (Ind. Ct. App. 2011). A sufficient nexus is established when a reasonably prudent person would consider the injury to be born out of a risk incidental to the employment, or when the facts indicate a connection between the injury and the circumstances under which the employment occurs. *Wine-Settergren v. Lamey*, 716 N.E.2d 381, 389 (Ind. 1999). Personal acts of employees which are reasonably necessary to their life, comfort, or convenience, even though such acts are not technically acts of service, have been deemed to be arising out of employment. *Prater v. Indiana Briquetting Corp.*, 253 Ind. 83, 90, 251 N.E.2d 810, 813 (1969) (employee being killed while traveling to a nearby business to purchase soft drinks arose out of employment). Examples have included washing up after work, satisfying thirst, seeking fresh air, answering telephone calls, eating lunch, or going to the restroom. *Indiana & Michigan Elec. Co. v. Morgan*, 494 N.E.2d 991, 993 (Ind. Ct. App. 1986).

[8] The risks incidental to employment fall into three categories: (1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) risks that are neutral in that they are neither distinctly associated with employment nor distinctly personal in character. *A Plus Home Health Care Inc. v. Miecznikowski*, 983 N.E.2d 140, 142 (Ind. Ct. App. 2012). Such risks are

covered under the Act, with the exception of the second category. *Id.* at 142-43. Risks personal to a claimant, caused by a pre-existing illness or a condition unrelated to employment, are not compensable. *Id.* at 143.

[9] PCI does not dispute that Lowe's injury arose in the course of his employment. However, PCI challenges the Board's determination that Lowe's injury arose out of his employment. According to PCI, when Lowe stepped into the smoke stack, he assumed a personal risk – one not inherent in his work environment.

[10] As an initial matter, PCI challenges one finding of fact – that of acquiescence. PCI argues that the record lacks evidentiary support for the finding:

> It is more likely than not that Defendant and/or the plant management knew that employees used the smoke stack in this manner [as a makeshift break area] and acquiesced.

(App. at 6.) There was no testimony before the Single Member that PCI or plant management specifically knew that the smoke stack was being used as a break area. However, there was evidence that the smoke stack had been used by multiple individuals over a long period of time, that its use was "general knowledge," and that it was cluttered with smoking and snack materials. (Tr. at 30.) From this evidence, the Single Member drew an inference, finding it "more likely than not" that there was acquiescence by management. (App. at 6.) This inference is a reasonable one.

[11] Moreover, the challenged finding is not the only finding relative to employee access to the smoke stack. In addition to adopting the Single Member's findings of fact, the Board also found that Lowe had not been explicitly

restricted from the roof or smoke stack. Whether or not PCI specifically knew of the common usage of the smoke stack, it was an area not marked by prohibitive signs and was accessible to Lowe. In other words, Lowe was in an area where he was at least tacitly permitted to be during the work day.

[12] PCI next argues that Lowe simply incurred a personal risk, for which worker's compensation benefits are not available.

[13] PCI directs our attention to a trilogy of worker's compensation cases wherein the claimant established the existence of only a risk personal to the employee: *Indiana Michigan Power Co. v. Roush*, 706 N.E.2d 1110 (Ind. Ct. App. 1999); *Rogers v. Bethlehem Steel Corp.*, 655 N.E.2d 73 (Ind. Ct. App. 1995); and *Pavese v. Cleaning Solutions*, 894 N.E.2d 570 (Ind. Ct. App. 2008).

[14] In *Indiana Michigan Power Co.*, telephone operator Roush had died after swallowing approximately one-half of a sandwich as he walked toward the switchboard where he worked. 706 N.E.2d at 1112. His widow had been awarded worker's compensation benefits, but a panel of this Court reversed that award, concluding that the Board erred in finding that Roush's choking arose out of and in the course of his employment. *Id.* at 1114. In particular, the Court observed:

> Roush's habit of putting a large amount of food in his mouth at one time and attempting to swallow it whole was a personal risk to which he would have been exposed each time he ate, whether that act occurred at work, at home, or at a restaurant. Nothing about Roush's employment increased his risk of choking or was causally connected to it.

*Id.* at 1115.

[15] In *Rogers*, an employee had been murdered by a co-worker at their place of employment. 655 N.E.2d at 74. His widow was denied certain death and statutory burial benefits and appealed that decision; a panel of this Court affirmed the denial:

> Joseph was known to carry large sums of money and had in the past loaned money to various persons, including Garry Moore. Joseph was not required to carry or loan money to any of his coworkers as a condition of his employment at Bethlehem Steel. Further, co-employee Jean Collins observed Moore and Joseph arguing over something, which was unrelated to the job and appeared to be a personal matter, ten days prior to Joseph's death. The transcript from Moore's criminal trial, which was admitted into evidence before the Board, also revealed that prior to the murder, Moore told Willie Martin that he was going to harm Joseph by using a bar to "bust him in his head." The evidence is sufficient to support the Board's conclusion that Joseph's death resulted from a risk personal to himself, i.e., the carrying and loaning of large sums of money, and it did not arise out of his employment with Bethlehem Steel.

*Id.* at 76.

[16] In *Pavese*, an employee of a cleaning company had been found unconscious on the floor of a gas company where she had been sent to provide cleaning services. 894 N.E.2d at 573. A medical examination resulted in a preliminary diagnosis of "an unexplained syncopal episode," but the physician also could not rule out the possibility of a fall due to slipping on the concrete floor. *Id.* at 574. Upon appeal following the denial of worker's compensation benefits, a panel of this Court held that – although Pavese's injury had occurred in the course of her employment – she had failed to meet her burden of proving that

her injury arose out of her employment. *Id.* at 578. The Court observed that the single hearing member had found Pavese experienced an unexplained syncopal episode, such was "a personal event," and Pavese had not proved the alternate grounds, slipping. *Id.*

[17] The foregoing cases involve events that would have taken place regardless of the environment provided by the employer. According to PCI, Lowe's decision to enter the smoke stack constitutes conduct giving rise to such a personal risk. PCI does not dispute that Lowe would be obliged to seek escape from dust, nor does PCI dispute the contention that Lowe was told to stay out of sight when not actively working.[1] Rather, PCI observes that the open roof was available and faults Lowe on his decision to enter the smoke stack. According to PCI, Lowe did not select the "best place" to seek fresh air. (Appellant's Br. at 16.)

[18] In hindsight, Lowe may not have made an optimal selection between available areas to escape the dust when he chose to enter what the Single Member had found to be a "makeshift break area." (App. at 7.) However, Lowe points out that the Act embodies a no-fault scheme, as opposed to one in which contributory negligence by the employee bars worker's compensation. We agree. *See Spangler, Jennings & Dougherty P.c. v. Indiana Ins. Co.*, 729 N.E.2d 117, 120 (Ind. 2000) (acknowledging that employers provide limited compensation to workers whose injuries arise out of and in the course of their

---

[1] Apparently, there had been discussion that, if contractors appeared idle, the premises owner could "lay them off." (Tr. at 13.)

employment, regardless of fault). Whether or not Lowe made the most prudent choice for his retreat from dust is not probative of whether he had a personal risk, i.e., that which is "caused by a pre-existing condition or unrelated to employment." *A Plus Home Health*, 983 N.E.2d at 143.

[19] Lowe's entry into the smoke stack was not unique conduct. Nor was it a type of conduct exposing him to risk regardless of whether he was at his workplace. The evidence before the Board does not lead unerringly to the conclusion that Lowe experienced a personal event when he fell.

# Conclusion

[20] We affirm the Board's determination that Lowe's injuries arose out of his employment. The Board properly determined that Lowe is entitled to benefits under the Act.

[21] Affirmed.

Riley, J., and Barnes, J., concur.