Bradford, Judge.
Case Summary
Appellant-Petitioner Matthew Ward applied for worker’s compensation benefits, claiming that pulmonary embolisms (“PEs”) he experienced in 2012 were caused by a work injury he suffered in 2010 while working for Appellee-Respon-dent Lowe’s. Although Ward supported his application with the opinion of a medical doctor, the Indiana Worker’s- Compensation Board (“the Board”) denied Ward’s application. Ward now appeals, contending that the Board abused its discretion in denying his application. Because we disagree, we affirm.
Facts and Procedural History
In 1995, Ward had surgery on his left leg for multiple fractures' after he was struck by a car, and the trauma caused varicose veins and some venous insufficiency in the lower leg. On July 6, 2010, Ward was working at the Lowe’s store in Bloom-ington when he lost his footing, spraining his left ankle' and fracturing the large toe on his left foot. Ward was directed "by a doctor to wear a CAM (“Controlled Ankle Movement”) walking boot to immobilize the foot and ankle and to elevate the injury, Ward was examined on July 14, 2010, and the examining physician concluded that Ward’s varicose veins in his left leg put him at elevated risk of deep vein thrombosis (“DVT”) in the area.' Immobilization is a known cause of DVT, which “can certainly lead to the development of pulmonary emboli.” Appellant’s App. Vol. II p. 143. Lowe’s accepted Ward’s injury *920 as compensable and provided Ward with statutory medical care through the end of 2010.
Meanwhile, on July 31, 2010, Ward arrived at the Bloomington Hospital Emergency Room complaining of chest pain. Ward’s examination revealed “a large amount of embolic material with the pulmonary arteries consistent with [a] large amount of bilateral pulmonary embolus” and DVT in his lower left leg, likely secondary to his toe fracture. Appellant’s App. Vol. II p. 68. Ward was prescribed Coumadin (an anti-coagulant) to treat his PEs. On August 11, 2010, Ward was examined and continued on a CAM walker, with the examining physician opining that “[h]is toe should essentially be healed at this point.” Appellant’s App. Vol. II p. 75.
On October 13, 2010, Dr. Russell Dukes examined Ward and noted improvement in Ward’s PEs. On December 20, 2010, Dr. Mark Hansen opined that Ward could return to work with no restrictions and evaluated him to have a zero-impairment rating for both his left ankle and left large toe. On January 24, 2011, Dr. Dukes evaluated a CT scan of Ward’s chest which was performed and concluded that “[t]here is no evidence for acute pulmonary emboli. There has been resolution of the extensive pulmonary emboli compared with the 07/31/2010 examination and now with only a thin linear filling defect within the descending right pulmonary artery likely representing residual scar/fibrotic change or minimal chronic embolus at this location.” Appellant’s App. Vol. II p. 104. Ward took Coumadin for approximately six to seven months before discontinuing in March of 2011. A May 26, 2012, medical report indicated that “[t]he patient was on Warfarin[1] until March of 2011 but discontinued when the clots in the lungs were gone, even though the patient still had [a] number [of] clots in the left lower extremity.” Appellant’s App. Vol. II p. 114-15.
In December of 2011, Ward left Lowe’s employ and moved to Chicago, taking a job through a temporary agency doing construction and various other physical labor at a Wal-Mart store. Ward described the work at Wal-Mart as “very [labor] intensive.” Appellee’s App. Vol. II p. 3-4. On May 26, 2012, Ward was stocking water jugs in the store when he began experiencing chest pain and shortness of breath. Ward was diagnosed with “acute to subacute left PE” and DVT, and it was concluded that “[the p]atient will require lifelong anticoagulation[.]” Appellant’s App. Vol. II p. 108.
In September 2012, Ward filed an application for adjustment of claim with the Board. Dr. Robert Gregori conducted an independent medical examination of Ward, which entailed interviewing him, examining him, and reviewing his medical records. Dr. Gregori acknowledged that Ward is “significantly deconditioned” and “obese,” Appellant’s App. Vol. II p. 145, but concluded that most of the medical treatment Ward had received since the 2010 work injury, including the treatment for the May of 2012 episode, was a result of that injury. Dr. Gregori also calculated “a 23% whole person impairment as a result of the DVT and pulmonary emboli related to his work injury.” Appellant’s App. Vol. II p. 146.
In October 2015, Krysten LeFavour, a member of the Board, held a hearing on Ward’s application. LeFavour concluded that Ward had failed to show that the May 2012 episode “was caused by his work accident.” Appellant’s App. Vol. II p. 12, LeFavour concluded that “[i]t is more like *921 ly that Plaintiffs condition in 2012 was related to either an idiopathic aggravation of his condition and/or his extensive physical labor at his job in 2012.” Appellant’s App. Vol. II p. 12. Ward then asked the full Board to review Hearing Member Le-Favour’s decision. After a hearing, the Board adopted LeFavour’s decision as its own, adding that “Dr. Gregori’s report dated June 24, 2014, is not sufficient to support Plaintiffs burden of proof that the incident in May of 2012 is causally connected to Plaintiffs work accident.” Appellant’s App. Vol. II p. 6. Ward argues that the uncontroverted medical opinion evidence he presented in the form of Dr. Gregori’s report compels reasonable people to reach a conclusion contrary to the Board’s.
Discussion and Decision
 The Worker’s Compensation Act requires employers to provide their employees with “compensation for personal injury or death by accident arising out of and in the course of the employment[.]” Ind. Code § 22-3-2-2(a). An accident occurs in the course of employment “when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged ■ in doing something incidental thereto.” Pavese v. Cleaning Sols., 894 N.E.2d 570, 575 (Ind. Ct. App. 2008). An injury arises out of employment when a causal nexus exists between the injury sustained and the duties or services performed by the employee. Id.
 Ward contends that the Board erred by denying his application for benefits. Because Ward had the burden of proving his entitlement to such benefits, he is essentially appealing from a negative judgment, which we will reverse only if the evidence is such that reasonable people would be compelled to reach a contrary conclusion. Outlaw v. Erbrich Prods. Co., 777 N.E.2d 14, 26 (Ind. Ct. App. 2002), trans. denied. We will not weigh the evidence nor judge the credibility of witnesses. Id. “Rather, we examine the record only to determine whether there is any substantial evidence and reasonable inferences which can be drawn therefrom to support the Board’s findings and conclusion.” Id.
 Lowe’s does not dispute that the PEs Ward suffered' in July of 2010 were caused by the accident earlier in the month. Lowe’s does, however, dispute that the 2010 accident was the cause.of the PEs diagnosed in May of 2012. It is true “ ‘that a subsequent incident or accident which results in a new, different or. additional injury is compensable if it is of such nature and occurs under such circumstances that it can be considered as the proximate and natural result of the original injury.’ ” Ind. State Police v. Wiessing, 836 N.E.2d 1038, 1046 (Ind. Ct. App. 2005) (quoting Yarbrough v. Polar Ice & Fuel Co., 118 Ind. App. 321, 324, 79 N.E.2d 422, 423 (1948) (citations omitted)).
 However, our court has long held that “the subsequent incident or accident may be such as to constitute an independent intervening agency which breaks the chain of causation between the two injuries and relieves the employer of responsibility for the latter.” Id. (quoting Yarbrough, 118 Ind.App. at 324, 79 N.E.2d at 423). “ ‘Cases may arise where the elements of time and space and intervening causes may be so involved that the second injury could not be said to be the proximate, natural, and probable result of the original accident, or the second accident may so predominate that it overshadows the original cause.’” Id. at 1047 (quoting Yarbrough, 118 Ind.App. at 324-25, 79 N.E.2d at 423-24) (internal citations omitted). “Lack of ordinary care on the part of *922 the claimant which proximately results in the second accident has been held to constitute an independent intervening agency which breaks, the . chain of causation between the two injuries and thus bars recovery for the second.” Id,
Whether the' second accident, in the case before us, was the proximate and natural result of the original injury, or whether it was the proximate result of the appellant's negligence and therefore should be regarded as an independent intervening cause, was a question of fact for the Industrial Board, to be decided ■in view of all the circumstances, and its findings in that regard must be sustained, even though the evidence is undisputed, if there is any legitimate theory applicable to the facts on which the award can be upheld.
Yarbrough, 118 Ind.App. at 325, 79 N.E.2d at 424. “In other words, if a rather slender thread of evidence supports the Board’s decision, we must affirm because the Board has the power to determine the ultimate facts in the case.” Wiessing, 836 N.E.2d at 1046 (citation and quotation marks omitted).
Here, Dr. Gregori’s expert opinion notwithstanding, the record allows for the conclusion that Ward’s 2012 PEs were more likely proximately caused by an intervening agent than by the 2010 injury. The Board considered evidence tending to prove that (1) Ward’s orthopedic injuries and initial PEs had been resolved by early 2011, (2) Ward stopped taking anticoagulants that were prescribed to treat' his PEs and DVT in March of 2011, and (3) Ward left Lowe’s and, accepted employment that he himself described as very labor-intensive. The record gives rise to a reasonable inference that Ward decided to stop taking Coumadin even though he was aware that he .suffered from unresolved DVT, that could lead to future PEs. As mentioned, a May 26, 2012, medical report indicated that Ward “was on Warfarin until March of 2011 but discontinued when the clots in the lungs were gone, even though the patient still had [a] number [of] clots in the left lower extremity.” Appellant’s App. Vol. II p. 114-15. At the very least, the Board was entitled to conclude that this decision and Ward’s decision to take on labor-intensive work were intervening causes of the 2012 PEs. Even if we assume that Ward’s 2010 injuries were a “but-for” cause of the 2012 PEs, significantly more than a “slender thread of evidence” supports a conclusion that Wade’s decisions concerning his healthcare and work were their proximate cause.[2] Wiessing, 836 N.E.2d at 1046.
 Ward’s argument on appeal is essentially that he should prevail because he presented an expert medical opinion on causation and Lowe’s did not. To the extent Ward argues that the Board was obligated to.accept Dr. Gregori’s conclusions because he was qualified as ,an expert witness or.because Lowe’s did not present, expert evidence of its own, we disagree. In fact, we have specifically rejected such arguments and made clear that there are many ways, other than expert evidence, for the defense to challenge a plaintiffs expert. “Doctors and other expert witnesses are not oracles whose opinions, once stated, cannot be questioned or refuted by other evidence, even if that evidence does not come in the form of another expert’s testimony.” Walker v. Cuppett, 808 N.E.2d 85, 95 (Ind. Ct. App. 2004). “It is axiomatic that the accuracy, consistency, and credibility of an expert’s opinions may properly be challenged by *923 vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact.” Id.
Ward relies on our opinion in May v. Ashley F. Ward, Inc., 952 N.E.2d 224 (Ind. Ct. App. 2011), trans. denied, in which we held that the Board erred by denying a claim for benefits where the claimant presented an expert’s opinion that his sinus, cancer was caused by his work exposure to- heavy metals. Id. at 231. Ward seems to suggest that the basis of our decision in May was the fact that the employer did not present any expert opinion evidence to refute the claimant’s. While this fact was noted in passing (“Further, Ashley Ward presented no expert testimony in opposition to Dr. Agostino’s testimony.”), it was not the basis of our decision. Id. May is simply one of those uncommon cases where “the evidence is undisputed and leads inescapably to a result contrary to the Board’s conclusion that May failed in his burden of establishing causation.” Id. Here, while very little, if any, of the evidence seems to be in dispute, that does not mean that it inescapably leads to a conclusion contrary to the Board’s. As we have already concluded, the record left the Board ample room to conclude that Ward’s 2012 PEs were caused by an intervening agent.
The decision of the Board is affirmed.
Brown, J., concurs.
Vaidik, C.J., dissents with opinion.

. Coumadin is one of many trade names for warfarin. See https://www.drugs.com/ internationaIAvarfarin.html (last visited April 21, 2017).

, In' the end, of course, the reason Ward stopped taking Coumadin is essentially irrelevant, Even if h.e had stopped taking it on doctor's orders, the Board would have still been entitled to find that to have been an intervening cause of the 2012 PEs.