Betsy WATERS, Appellant–Plaintiff,

v.

INDIANA STATE UNIVERSITY, Appellee–Defendant.

No. 93A02–1101–EX–78.

Court of Appeals of Indiana.

Aug. 4, 2011.

Transfer Denied Dec. 1, 2011.

---

Gerald H. McGlone, McGlone Law, Terre Haute, IN, Attorney for Appellant.

James E. Sullivan, Cox Zwerner Gambill & Sullivan, LLP, Terre Haute, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Betsy Waters ("Waters") was denied worker's compensation benefits by the full Worker's Compensation Board ("the Board"). Waters now appeals and argues that the Board's conclusion that Waters is not entitled to worker's compensation benefits is not supported by substantial evidence. We reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

Waters worked for Indiana State University ("ISU") for nearly eighteen years making custom draperies for the residence halls. During the time period relevant to this appeal, Waters weighed approximately 360 pounds, suffered from diabetes, and

walked with a cane due to problems with her knees.

On July 28, 2004, Waters attended an annual employee appreciation luncheon sponsored by ISU. Employees were not required to attend the event, but if they chose to do so, they were paid for the time they spent there.

The event was held in a cafeteria located on campus. During the meal, Waters sat in a restaurant-style booth with her supervisor, Elaine Pastore. The booth consisted of a table and two bench seats with backs. The front part of the seat extended beneath the edge of the table, and the seat could not be pushed back from the table.

At the conclusion of the luncheon, Waters had difficulty getting out of the booth. First, Waters had to rock back and forth to gain the momentum necessary to stand. Then, as she began to stand up, Waters had to twist her body in order to get out of the booth. As she twisted, Waters felt a "pop" and pain in the upper part of her right leg, near her hip. Waters then walked to her car with great difficulty and drove to another part of campus to finish her workday. She worked for approximately an hour before clocking out and going home for the day.

The next day, Waters decided to seek medical attention because she had difficulty standing and continued to experience severe pain in her leg. A medical examination revealed that Waters had sustained a cracked right femur, and Waters underwent immediate surgery to have a pin and plate placed at the site of the fracture. Subsequent to the initial surgery, Waters suffered recurring infections and had to undergo multiple additional surgeries. Waters has not returned to work following her injury.

After ISU refused to pay worker's compensation benefits to Waters, Waters filed an Application for Adjustment of Claim with the Board on April 14, 2005. On September 28, 2009, a Single Hearing Member held a hearing on Waters's claim for worker's compensation benefits. On May 19, 2010, the Single Hearing Member issued an order concluding that Waters was not entitled to worker's compensation benefits. The order was accompanied by the following findings of fact and conclusions of law:

1. As the parties' stipulation reveals, the dispute in this case is solely whether [Waters's] injury arose out of her employment with [ISU]. There is no dispute that [Waters] was attending an employer-approved event and was "on-the-clock", but it was not mandatory for her to attend. The central factor is whether [Waters's] injury stemmed from a risk associated with her employment.

2. The existing conditions [Waters] had for a considerable period of time before that date were morbid obesity (weight of approximately 362 pounds), Diabetes Mellitus Type II and walking with a cane. [Waters] was able to perform her duties for [ISU] adequately, even very well in the opinion of her former supervisor.

3. On July 28, 2004, [Waters] was attending an annual party thrown by Residential Life to show appreciation for workers such as [Waters]; [Waters] made custom drapery for all residence halls. The party took place in the dining room in Bloomberg Hall.

4. While rising from her seat in a booth, following the party meal, [Waters] had to rock back and

forth to gain the momentum necessary to stand. While twisting to get up, she felt a "pop". It is likely that she broke her femur at that time.

5. The parties invested a great deal of time and expense in evaluating the nature of the booth. [Waters] appears to be suggesting that the risk associated with her employment was the choice in design of seating available for [Waters] at the party.

6. [ISU] has presented evidence that there was other types [sic] of seating available and that the booth was of adequate design in construction. The photographic evidence suggests both of these statements to be true, though not significant to the outcome here.

7. There was no increased risk created by the work or work environment for the injury [Waters] sustained.

8. [Waters] seems to argue that since the employer accepted [Waters] with knowledge of the conditions noted in paragraph # 2 above that any risk associated with those conditions becomes a risk of employment so long as the injury occurs during working hours.

9. The risk that resulted in [Waters's] injury was personal to [Waters].

10. [Waters] should take nothing on her Application for Adjustment of Claim filed April 14, 2005.

Appellant's App. pp. 7–9. Waters filed an application for review by the Board, and on January 13, 2011, the Board issued an order affirming the Single Hearing Member's denial of Waters's claim and incorporating the Single Hearing Member's findings and conclusions. Waters now appeals.

**Standard of Review**

 " 'On appeal, we review the decision of the Board, not to reweigh the evidence or judge the credibility of witnesses, but only to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions.' " *Bertoch v. NBD Corp.,* 813 N.E.2d 1159, 1160 (Ind.2004) (quoting *Walker v. State,* 694 N.E.2d 258, 266 (Ind. 1998)). In so doing, we apply a two-tiered standard of review. *Ag One Co-op v. Scott,* 914 N.E.2d 860, 862 (Ind.Ct.App. 2009). We first review the record to determine whether there is competent evidence of probative value to support the Board's findings, and then determine whether the findings support the decision. *Id.* at 863. As a general matter, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions of law. *Ind. Mich. Power Co. v. Roush,* 706 N.E.2d 1110, 1113 (Ind.Ct. App.1999). However, we may disturb the Board's factual determinations if we determine that the evidence is undisputed and leads inescapably to a result contrary to that reached by the Board. *Id.* We review the Board's conclusions of law *de novo. Bertoch,* 813 N.E.2d at 1160.

**Discussion and Decision**

 Waters argues that the Board's conclusion that her injuries were not compensable under the Worker's Compensation Act ("the Act") is not supported by substantial evidence. The Act requires employers to provide their employees with "compensation for personal injury or death by accident arising out of and in the course of the employment[.]" Ind.Code § 22–3–2–2(a) (2005). An accident occurs in the course of employment "when it takes place within the period of employment, at a place where the employee may reasonably

be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto." *Pavese v. Cleaning Solutions*, 894 N.E.2d 570, 575 (Ind.Ct.App.2008). An injury arises out of employment when a causal nexus exists between the injury sustained and the duties or services performed by the employee. *Id.*

 Whether an injury arises out of and in the course of employment is generally a question of fact for the Board. *Roush*, 706 N.E.2d at 1113. But when the facts relating to the question of liability under the Act are undisputed and lead to only one reasonable inference, the determination of whether an injury or death arose out of and in the course of employment is a question of law. *Id.* The person seeking worker's compensation bears the burden of proving both of these elements. *Pavese*, 894 N.E.2d at 575.

 The parties do not dispute that Waters's injury occurred in the course of her employment.[1] Rather, the question presented here is whether Waters's injury arose out of her employment. As we explained above, in order to meet her burden of proving that her injury arose out of her employment, Waters was required to establish the existence of a causal nexus between the injuries she suffered and the duties or services she performed for ISU.

*See id.* This nexus is established "when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment or when the facts indicate a connection between the injury and the circumstances under which the employment occurs." *Id.* Our supreme court has held that in the context of determining whether an injury arose out of a claimant's employment, the term "employment"

means more than merely performing services directly related to the job for which the employee was hired. It includes activities reasonably incidental to one's employment, such as recreation at an employer-sponsored off-site business meeting or after-hours party, driving to or exiting from work, and personal acts reasonably necessary to the life, comfort, and convenience of an employee even though they are not technically acts of service to the employer. For example, where an employee is washing up after work, satisfying his thirst, seeking fresh air, answering telephone calls, eating lunch, or going to the toilet, such personal acts have been held to be in the pursuit of personal comfort or convenience and thus incidental to employment.

*Wine–Settergren v. Lamey*, 716 N.E.2d 381, 389–90 (Ind.1999) (footnote, citations, and quotations omitted).

---

1. An employee's activity will be considered incidental to his or her employment if the activity directly or indirectly advances the employer's interest. *Weldy v. Kline*, 616 N.E.2d 398, 404 (Ind.Ct.App.1993). In *Weldy*, another panel of this court held that an employee's drowning death at an employer-sponsored, after-hours party occurred in the course of his employment because the employer provided the food, activities, and location, attendance by employees was voluntary but encouraged, and the party's purpose "was to generate good will among the employees and to otherwise benefit [the employer]." *Id.* at 405. Here, Waters was injured while attending an employer-sponsored employee appreciation luncheon held during working hours in one of ISU's dining halls. ISU provided refreshments and games, and although Waters was not required to attend the event, she was invited to do so and was paid for the time she spent there. Most importantly, Waters's supervisor indicated at the hearing before the Single Hearing Member that the purpose of the luncheon was to show appreciation for employees and otherwise promote employer-employee relations. Tr. p. 10. In light of *Weldy* and the cases cited therein, we agree that Waters's injury occurred in the course of her employment.

In concluding that Waters was not entitled to worker's compensation benefits, the Board adopted the Single Hearing Member's findings that "[t]he risk that resulted in [Waters's] injury was personal to [Waters]" and that "[t]here was no increased risk created by the work or work environment for the injury [Waters] sustained." Appellant's App. p. 8. Waters argues that the Board erred in concluding that her injuries resulted from a risk personal to her because, even assuming that her pre-existing conditions made her more susceptible to injury, the circumstances of her employment contributed to her injuries.[2]

Risks personal to the claimant are those " 'caused by a pre-existing illness or condition, unrelated to employment.' " *Pavese*, 894 N.E.2d at 576 (quoting *Milledge v. The Oaks*, 784 N.E.2d 926, 930 (Ind.2003)). Injuries resulting solely from risks personal to the claimant are entirely unrelated to the circumstances of employment, and are therefore "universally noncompensable." *See Kovatch v. A.M. General*, 679 N.E.2d 940, 943 (Ind.Ct.App. 1997), *trans. denied.* The classic example of a risk personal to a claimant is a "syncopal episode" or fainting spell, which usually leads to a fall and resulting injuries. *See Pavese*, 894 N.E.2d at 578. But where an employee's pre-existing condition combines with a circumstance of his or her employment to result in an injury, the employee is entitled to recover for the full extent of the injury. *See Bertoch*, 813 N.E.2d at 1162 (claim compensable where employee's severe pre-existing heart disease combined with stress caused by employee's response to workplace fire resulted in fatal heart attack); *see also Hansen v. Von Duprin, Inc.*, 507 N.E.2d 573, 577 (Ind.1987); *Wright Tree Serv. v. Hernandez*, 907 N.E.2d 183, 187–88 (Ind.Ct.App. 2009), *trans. denied.*

The facts and circumstances leading up to Waters's injury are not in dispute. Waters, who was obese and suffered from diabetes and problems with her knees, attended an employee appreciation luncheon, where she sat in a restaurant-style booth. At the end of the meal, Waters had difficulty exiting the booth. She had to rock back and forth to gain momentum, and as she stood up, she had to twist her body to free herself from the booth. As she twisted, she felt a pop and pain in her right leg near her hip, and a subsequent medical

---

**2.** ISU claims that Waters's argument is based on the now-defunct "positional risk doctrine." Our supreme court first adopted the positional risk doctrine in *Milledge v. The Oaks*, 784 N.E.2d 926, 933 (Ind.2003). In *Milledge*, the court explained that risks incidental to employment fall into three categories: (1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) neutral risks, or risks neither distinctly employment-related nor distinctly personal in character. *Id.* at 930. Under the doctrine, when injuries resulting from neutral risks occur in the course of employment, a presumption is triggered that the injury also arose out of the employment and the burden shifts to the employer to prove that the injury was the result of a risk personal to the claimant. *Id.* at 931.

Three years after *Milledge*, the General Assembly amended Indiana Code section 22–3–2–2 to add the following language to the end of subsection (a): "The burden of proof is on the employee. The proof by the employee of an element of a claim does not create a presumption in favor of the employee with regard to another element of the claim." In *Pavese*, another panel of this court recognized that the amendment overruled the positional risk doctrine adopted by our supreme court in *Pavese*, 894 N.E.2d at 576.

Nowhere in her brief does Waters argue that the burden shifted to ISU to prove that her injury did not arise out of her employment, and the vast majority of cases cited in her brief were decided prior to our supreme court's adoption of the doctrine in *Milledge*. Neither Waters's argument nor our holding is based on an application of the positional risk doctrine.

evaluation revealed that Waters had sustained a broken femur. From these facts, it is clear that even if Waters's pre-existing physical conditions made her more susceptible to being injured, a condition of her work environment—the booth—also contributed to her injuries.

Nevertheless, in finding that Waters's injuries resulted from risks personal to her, the Board attributed Waters's injury to her preexisting physical conditions alone. As an initial matter, we note that our review of the record has not revealed any evidence supporting a conclusion that Waters's injury was caused by her pre-existing conditions. Rather, the medical reports submitted into evidence attributed her injury to her exit from the booth. *See, e.g.,* Ex. Vol., Defendant's Ex. 2, p. 456 (noting that Waters was injured while getting out of a booth). Moreover, the findings of the Single Hearing Member, as incorporated by the full Board, undermine any conclusion that Waters's injury was solely the result of an endogenous condition unrelated to the circumstances of her employment. Specifically, the Board found that "[w]hile rising from her seat in a booth, following the party meal, [Waters] had to rock back and forth to gain the momentum necessary to stand. While twisting to get up, she felt a 'pop'. It is likely that she broke her femur at that time." Appellant's App. p. 8. Thus, even the Board acknowledged that Waters's exit from the booth contributed to her injuries. We therefore hold that the Board's conclu-sion that Waters's injury was a result of risks personal to her is not supported by substantial evidence.

■ It appears that both ISU's denial of benefits and the Board's conclusion that Waters's injuries are not compensable were based on a conclusion that at the time of her injury, Waters was engaged in an "activity of daily living," that is, getting out of a restaurant-style booth.[3] *See* Ex. Vol., Plaintiff's Ex. 18, p. 234, Ex. Vol., Defendant's Ex. 2, p. 456. The Board's conclusion in this regard appears to be based on a letter authored by Dr. John B. Meding and submitted into evidence at the hearing. In the letter, Dr. Meding noted the manner in which Waters was injured and reached the following conclusion:

> Please be advised that, while such an injury is certainly unusual, with a history of no trauma or accident and, while her injury did occur at a company picnic, the activity involved would be considered a routine activity of daily living, that is, getting out of a booth, and, therefore, I would not consider this injury work related.

Ex. Vol., Defendant's Ex. 2, p. 456.

■ Dr. Meding's report is based on a flawed premise. In determining whether an injury is compensable under the Act, the dispositive issue is not whether the injury resulted from an everyday activity as opposed to some unusual event; rather, the issue is merely whether the injury

---

**3.** The conclusion was not predicated on a finding that Waters acted unreasonably in choosing to sit at the booth or a finding that the booth was adequately designed and constructed for its intended uses. Indeed, the Board adopted the Single Hearing Member's finding that ISU had presented evidence that other types of seating were available to Waters and that the booth was adequately designed and constructed, but that such evidence was "not significant to the outcome here." Appellant's App. p. 8. We agree with the Single Hearing Member's conclusion that such evidence is not determinative here, as the purpose of the Act is to provide injured employees with a statutory right to compensation for accidental injuries arising out of and in the course of the employment, regardless of fault. *See* I.C. § 22–3–2–2(a); *Waldridge v. Futurex Indus., Inc.,* 714 N.E.2d 783, 786 (Ind.Ct.App.1999), *trans. denied.*

itself was unexpected. *Bertoch,* 813 N.E.2d at 1162; *Hernandez,* 907 N.E.2d at 187. Although Waters was arguably performing a personal function at the time of her injury—attempting to rise after sitting down to eat lunch—our supreme court has held that risks associated with an employee's "pursuit of personal comfort or convenience[,]" including "washing up after work, satisfying his thirst, seeking fresh air, answering telephone calls, eating lunch, or going to the toilet" are incidental to, and therefore considered to arise out of the employment. *Wine–Settergren,* 716 N.E.2d at 389–90. Surely the risks associated with Waters's act of sitting in an employer-provided booth while eating a meal at an employee appreciation luncheon, and her subsequent exit from the booth, fall within this category of risks.

We are mindful of our standard of review: we review a decision of the Board only to determine whether it is supported by substantial evidence, and we may only disturb the Board's factual determinations if the evidence is undisputed and leads inescapably to a result contrary to that reached by the Board. *Bertoch,* 813 N.E.2d at 1160; *Roush,* 706 N.E.2d at 1113. Whether an injury arises out of employment is generally a question of fact for the Board, but when the facts relating to the question of liability are undisputed and lead to only one reasonable inference, the determination becomes a question of law, which we review *de novo. Bertoch,* 813 N.E.2d at 1160; *Roush,* 706 N.E.2d at 1113.

In this case, we hold that the undisputed evidence leads inescapably to a conclusion opposite that reached by the Board. The issue of whether Waters's injury arose out of her employment is a question of law subject to *de novo* review. While Waters's pre-existing physical condition may have contributed to her injuries and undoubted-ly hampered her recovery, her injuries were at least partially attributable to her exit from the booth. Accordingly, we hold that the Board's finding that Waters's injury did not arise out of her employment is not supported by substantial evidence. We therefore reverse the Board's decision and remand for further proceedings consistent with this opinion.

Reversed and remanded for proceedings consistent with this opinion.

KIRSCH, J., and VAIDIK, J., concur.