## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 08 2017, 7:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Robert Yeager
Yeager Good & Baldwin, P.A.
Shelbyville, Indiana

ATTORNEY FOR APPELLEE

Paul L. Fields
Law Offices of the Liberty Mutual Group
Carmel, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

DiAnn Griffith,

*Appellant-Plaintiff,*

v.

Shelby Eastern Schools,

*Appellee-Defendant*

September 8, 2017

Court of Appeals Case No.
93A02-1705-EX-1115

Appeal from the Full Worker's Compensation Board of Indiana

Linda P. Hamilton, Chairman

Application Nos. C-224539 and C-224554

**Crone, Judge.**

## Case Summary

[1] DiAnn Griffith applied for worker's compensation benefits, alleging that she suffered injuries arising out of and in the course of her employment as a custodian with Shelby Eastern Schools ("SES"). The Worker's Compensation

Board ("the Board") ruled that Griffith is entitled to $2100 in permanent partial impairment ("PPI") benefits for a right rotator cuff injury, in addition to temporary total disability ("TTD") benefits that SES had already paid. On appeal, Griffith argues that she is entitled to additional PPI and TTD benefits, permanent total disability ("PTD") benefits, and future medical expenses plus attorney's fees for additional injuries. We conclude that Griffith has failed to carry her burden to prove a right to such compensation, and therefore we affirm.

## Facts and Procedural History[1]

In April 2014, Griffith filed two applications for worker's compensation benefits. After a hearing, a member of the Board issued an order that outlines the relevant procedural history and reads in pertinent part as follows:[2]

### STIPULATIONS

1. Griffith was an employee of SES prior to June 4, 2012, through June 15, 2012, at an average weekly wage of $543.09.

---

[1] Indiana Appellate Rule 46(A)(6) provides that an appellant's statement of facts "shall describe the facts relevant to the issues presented for review"; that "[t]he facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed"; and that "[t]he statement shall be in narrative form …." Griffith's statement of facts is a nine-page litany of disagreements with the Board's findings and conclusions, which belongs in the argument section of her brief. We further note that Griffith's appellant's appendix contains copies of exhibits in violation of Appellate Rule 50(F), which states that "parties should not reproduce any portion of the Transcript in the Appendix." *See* Ind. Appellate Rule 2(K) (defining "Transcript" as "the transcript or transcripts of all or part of the proceedings in the … Administrative Agency that any party has designated for inclusion in the Record on Appeal *and any exhibits associated therewith.*") (emphasis added).

[2] The order refers to Plaintiff and Defendant; we use Griffith and SES where appropriate.

2. On or about June 4, 2012, Griffith reported to SES that she was shaking a dust mop when she felt her left shoulder pop.

3. On or about June 12, 2012, Griffith reported to SES that she was using a floor scrubber when she jammed her right shoulder.

4. SES provided statutory medical relief treatment until Griffith was released at maximum medical improvement ["MMI"] on April 9, 2014.

5. SES paid Griffith a total of $30,206.16, in temporary total disability compensation.

6. On April 12, 2014, Griffith signed and filed the Form 38911 indicating her disagreement with the termination of her compensation and her request for a Board appointed IME [independent medical examination].

7. On April 15, 2014, Griffith filed an Application for Adjustment of Claim alleging an injury to her left shoulder and neck on June 8 [sic], 2012, and another Application for Adjustment of Claim alleging an injury to her right shoulder and neck on June 12, 2012. ….

AND said Stipulations were accepted and approved by the undersigned and made a part of The Findings herein. It was further stipulated that the respective submissions of evidence tendered by and on behalf of the parties be admitted into evidence.

## ISSUES

1. Whether Griffith is entitled to additional [TTD] benefits, and [if] so, how much?

2. Whether Griffith is entitled to [PPI] benefits, and if so, how

much?

3. Whether Griffith is entitled to [PTD] benefits, and if so, how much?

4. Whether SES is responsible for Griffith's future medical expenses and, if so, how much?

5. Whether Griffith's Counsel is entitled to an attorney fee in regard to future medical expenses, and, if so, how much?

## FINDINGS OF FACT

1. Griffith was working as a custodian for SES on June 4, 2012 and June 12, 2012. On June 4, 2012, she was shaking out a dust mop when she felt pain in her left shoulder. She continued to work after this incident and did not seek medical treatment.

2. On June [12[3]], 2012, she was using a floor scrubber that became stuck and kicked back causing a jerk in her right shoulder.

3. Griffith was seen at Priority Care on June 20, 2012, where she was diagnosed with left and right shoulder sprains. She was directed to therapy at SportsWorks and ultimately was referred to an orthopedic specialist, Dr. Peter Sallay.

4. On August 27, 2012, she underwent MRIs to the left and right shoulders which revealed rotator cuff tears to both shoulders.

5. Griffith underwent surgery to her right shoulder on October 9, 2012, and her left shoulder on March 14, 2013.

---

[3] The member's order states that this incident occurred on June 8. The Board's order amended this clerical error.

6. On November 2, 2012, Dr. Sallay noted that Griffith complained of neck pain which he noted in the history section was present since the date of accident. Griffith's medical records did not initially document a complaint of neck pain.

7. On February 13, 2013, Griffith reported an aggravation of her condition after shoveling drywall into a bin while helping remodel her son's house.

8. Griffith was seen by Dr. Jon McLimore and Dr. Jonathan Helvie for her neck pain. She underwent multiple injections, radiofrequency rhizotomy procedures, physical therapy, and an MRI of the cervical spine which revealed moderately severe foraminal stenosis on the right at C3-4. Griffith complained of headaches and a feeling of fullness in her head which she believed was caused by her physical therapy.

9. Griffith was released by Dr. Sallay at maximum medical improvement to her right shoulder on April 26, 2013. Dr. Sallay opined that she suffered from a 3% upper extremity impairment as a result of the injury to her right shoulder.

10. Griffith saw Dr. Mihir Patel for a second opinion on her left shoulder on October 8, 2013. Dr. Patel agreed with Dr. Sallay's recent opinion that she should undergo a left shoulder arthoscopy and acromioplasty. Griffith underwent a second surgery to her left shoulder on October 17, 2013.

11. On November 13, 2013, Dr. Jonathan Helvie opined that Griffith was at maximum medical improvement for her cervical condition. He gave her restrictions of no overhead work and no lifting over 30 lb. Dr. Helvie noted that Griffith had signs of osteoarthritis and degenerative disc disease.

12. Griffith was directed to Dr. Joseph Bergeron on December 19, 2013, who conducted additional injections to the cervical

spine and opined that no surgery was indicated.

13. Griffith underwent a Functional Capacity Evaluation (FCE) on March 28, 2014. Based on the results of the FCE, Griffith is able to perform jobs within the light physical demand category. Griffith had no deficits in standing or sitting and her deficits in walking, climbing, stooping, kneeling, crouching, and crawling were all due to her unrelated knee conditions.

14. Dr. Sallay released Griffith at maximum medical improvement for her left shoulder on April 18, 2014. He opined that she sustained a 4% whole person impairment to her left shoulder for a combined whole person impairment of 6%. Dr. Sallay opined that Griffith could return to work with restrictions of floor to waist lifting on the left arm of 8 lbs., waist to shoulder of 16 lbs,, and push-pull of 20 lbs.

15. Dr. Helvie issued an opinion on March 3, 2015, that Griffith had sustained a 6% whole person impairment for cervical spondylosis.

16. Griffith was evaluated by Board appointed Independent Medical Examiner, Dr. Kevin Julian, on December 2, 2014. Dr. Julian diagnosed her with bilateral shoulder pain consistent with shoulder impingement and bilateral rotator cuff tears. Dr. Julian opined that the right shoulder injury was related to her work accident, but that her left rotator cuff tear was inconsistent with the mechanism of injury described of shaking a mop, and was not work-related. Dr. Julian further opined that Griffith's cervical condition was pre-existing and not related to a work accident. He opined that Griffith was at maximum medical improvement and required no additional medical treatment.

17. Griffith disagrees with all of the medical opinions in the record regarding her permanent partial impairment and testified that she believes she has a permanent partial impairment of 40% to the whole person. Griffith gave no credible rationale for her

estimate of impairment.

18. Vocational expert, Thomas Roundtree, opined that Griffith could not sustain competitive or reasonable employment based on her subjective complaints, the FCE, and her attempt to work with vocational rehabilitation. Roundtree took into account Griffith's left arm and neck complaints, as well as her headaches and memory complaints.

19. Griffith was unsuccessful in vocational rehabilitation because she was unable to stand without getting dizzy and suffered from memory problems. There is no medical record in evidence which connects memory problems or dizziness to Griffith's work accidents.

20. Griffith complains of pain in her neck, headaches, ear pain, decreased strength in her right shoulder, and difficulty lifting with her left arm. She has difficulty with tasks at home such as gardening, painting, and washing windows.

21. Griffith is 58 years old and has a 12th grade education. She has a varied employment history which includes waitressing, factory work, and accounting.

22. Griffith has unrelated personal health conditions including diabetes, a history of stroke, carp[a]l tunnel syndrome in the right and left extremities, and issues with both of her knees which required total knee replacements.

CONCLUSIONS

1. Griffith has met her burden of proving that she was injured in the course of and arising out of her employment with SES on June 4, 2012, when she sustained a left shoulder sprain. However, the accident did not cause a left shoulder rotator cuff tear consistent with the opinion of the Board IME, Dr. Julian.

Dr. Julian's opinion as it pertains to the causation of Griffith's left shoulder condition is persuasive in this regard.

2. Griffith has met her burden of proving that she was injured by accident in the course of and arising out of her employment on June 12, 2012, which injury was to her right shoulder.

3. Griffith has not met her burden of proving that she injured her neck as a result of a work accident. Dr. Julian's opinion is persuasive as it pertains to the opinion that her cervical condition was not work-related and rather was preexisting. Further, Griffith's complaints of neck pain did not occur for several months.

4. Griffith has not met her burden of proving that her headaches, vision loss, and memory problems are related to her work accidents.

5. Griffith was temporarily totally disabled from work as a custodian through April 26, 2013, when she reached maximum medical improvement for her right shoulder injury.

6. Griffith sustained a 3% upper extremity impairment to her right shoulder as a result of the work accident on June 12, 2012. Griffith did not sustain a permanent partial impairment to her left shoulder as a result of the sprain to her left shoulder.

7. Griffith has not met her burden of proving that she is permanently totally disabled as a result of her work accidents. Griffith has a myriad of personal and unrelated conditions which are preventing her from working. The opinion of Mr. Roundtree is given less weight due to his reliance on unrelated medical conditions.

8. Griffith is not entitled to future medical treatment as a result of her work accidents per the opinion of the Board IME, Dr. Julian.

> IT IS THEREFORE, ORDERED; by the Worker's Compensation Board of Indiana that Griffith was temporarily totally disabled from work as a custodian through April 26, 2013.
>
> It is further ordered that Griffith sustained a 3% upper extremity impairment to her right shoulder as a result of the work accident on June 12, 2012, in the amount of $2,100.00.

Appealed Order at 1-6 (underlining omitted).

Griffith sought review of the member's order by the full Board, which affirmed it. She now appeals the Board's decision.

# Discussion and Decision

The Worker's Compensation Act requires employers to compensate their employees for personal injury by accident arising out of and in the course of the employment. *Waters v. Ind. State Univ.*, 953 N.E.2d 1108, 1112 (Ind. Ct. App. 2011) (citing Ind. Code § 22-3-2-2(a)), *trans. denied*. "An accident occurs in the course of employment "when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto." *Id*. at 1112-13 (citation and quotation marks omitted). "An injury arises out of employment when a causal nexus exists between the injury sustained and the duties or services performed by the employee." *Id*. at 1113. "Whether an injury arises out of and in the course of employment is generally a question of fact for the Board." *Id*. It is the claimant's burden to prove a right

to compensation under the Act. *Smith v. Bob Evans Farms, Inc.*, 754 N.E.2d 18, 23 (Ind. Ct. App. 2001), *trans. denied* (2002). Thus, Griffith appeals from a negative judgment, which may be sustained by an absence of evidence favorable to her contentions or by the presence of evidence adverse to her contentions. *Id.*

[5] Griffith appeals the Board's determination that she is entitled only to $2100 in PPI benefits for her right rotator cuff injury. In conducting our review, we neither reweigh the evidence nor judge the credibility of witnesses; we determine only whether substantial evidence, together with any reasonable inferences that flow therefrom, support the Board's findings and conclusions. *Waters*, 953 N.E.2d at 1112. In doing so, we apply a two-tiered standard of review. *Id.*

> We first review the record to determine whether there is competent evidence of probative value to support the Board's findings, and then determine whether the findings support the decision. As a general matter, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions of law. However, we may disturb the Board's factual determinations if we determine that the evidence is undisputed and leads inescapably to a result contrary to that reached by the Board. We review the Board's conclusions of law *de novo*.

*Id.* (citations omitted).

[6] Griffith challenges many of the Board's findings and conclusions. Some of Griffith's arguments are quibbles that, even if meritorious, would not require

reversal of the Board's decision.[4] Others involve skewed interpretations of the Board's decision.[5] Still others are invitations to reweigh evidence or judge witness credibility, which we may not do.[6] Consequently, we confine our discussion to plausibly meritorious arguments that could conceivably affect the outcome of Griffith's case. *See* Ind. Appellate Rule 66(A) ("No error or defect in any ruling or order … is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.").

[7] We first address Griffith's argument regarding conclusion 5, which states that she was temporarily totally disabled through April 26, 2013, when she reached MMI for her right shoulder injury. Griffith claims that this is contrary to the parties' stipulation that she was released at MMI on April 9, 2014. SES points out that the Board determined that her left rotator cuff tear and other alleged injuries were not work-related, "and therefore her temporary total disability would end when the work[-]related right shoulder injury reached maximum medical improvement on April 26, 2013[,]" as stated in finding 9. Appellee's

---

[4] For example, regarding finding 1, Griffith questions the meaning of the phrase "continued to work" and claims that the Board erred in finding that she "did not seek medical treatment" given her testimony that she wanted to see a doctor after the June 4 incident but got caught up in a bureaucratic back-and-forth about accident reports. All of this is irrelevant to the substantive issues decided by the Board.

[5] Regarding finding 6, Griffith suggests that the Board found that her medical records did not document a complaint of neck pain until November 2012. That is not what the finding says.

[6] Griffith claims that finding 17 is unsupported by the evidence because her own estimate of impairment was uncontradicted. "As a general rule, factfinders are not required to believe a witness's testimony even when it is uncontradicted." *In re L.C.*, 23 N.E.3d 37, 46 (Ind. Ct. App. 2015) (quoting *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004)), *trans. denied*. Griffith offers no exceptions to that rule here.

Br. at 7. The parties may have stipulated that Griffith was released at MMI on a certain date, but they did not stipulate that she was entitled to TTD benefits for all of her alleged injuries up to that date, i.e., that all of her alleged injuries were work-related. This disposes of Griffith's related argument that she is entitled to additional TTD benefits through April 9, 2014.

[8] Griffith also claims that she is entitled to additional PPI benefits, PTD benefits, and future medical expenses and related attorney's fees, but this argument is premised on her argument that all of her alleged injuries other than her right rotator cuff injury are work-related. The Board rejected that argument based on Dr. Julian's opinion, which it found persuasive. We find Griffith's criticisms of Dr. Julian's opinion (and of the Board's characterization of his opinion) unpersuasive,[7] and therefore we affirm the Board's decision.

[9] Affirmed.

Vaidik, C.J., and Mathias, J., concur.

---

[7] For example, Dr. Julian opined that Griffith's "left rotator cuff tear was more likely than not present prior to the work related incident" and stated that he could not "explain the development of a rotator cuff tear from shaking out a dust mop, or that a pre-existing tear would be made worse by shaking out [a] dust mop." Ex. Vol. 4 at 134-35. In finding 16, the Board characterized this opinion as follows: "Dr. Julian opined … that [Griffith's] left rotator cuff tear was inconsistent with the mechanism of injury described of shaking a mop, and was not work-related." Appealed Order at 4. Griffith argues that Dr. Julian did not opine that her left rotator cuff tear was not work-related, but that is simply not true. Griffith also takes Dr. Julian to task for not specifically acknowledging Dr. Helvie's opinion that her cervical condition was work-related, but she cites no authority for the proposition that Dr. Julian was required to do so.