## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 25 2018, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeanne M. Hamilton
Indianapolis, Indiana

Miriam Rich
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Randal M. Klezmer
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dish Network,

*Appellant-Defendant,*

v.

Ronda Marsh,

*Appellee-Plaintiff*

April 25, 2018

Court of Appeals Case No.
93A02-1707-EX-1650

Appeal from the Worker's Compensation Board of Indiana

Full Worker's Compensation Board Linda Peterson Hamilton, Chairman

Trial Court Cause No.
C-229269

**Altice, Judge.**

**Case Summary**

Dish Network (Dish) appeals from the decision of the full Worker's Compensation Board (the Board) awarding Ronda Marsh temporary total disability benefits for injuries Marsh suffered in an automobile accident that arose out of and in the course of her employment with Dish. Dish presents several issues for our review, which we consolidate and restate as: Is the Board's decision supported by sufficient evidence? On cross-appeal, Marsh requests that her award be increased by ten percent rather than the statutory five percent.

We affirm.

### Facts & Procedural History[1]

Marsh was employed by Dish as a technician/installer with a hire date of September 17, 2012. Marsh's work duties required her to drive a company vehicle. Dish required its drivers to watch driver safety videos, and Marsh signed log sheets reflecting that she had participated in such training. An express statement found in Dish's employee handbook informed Dish employees that "[s]eatbelts must be worn while driving or riding in company vehicles." *Exhibit Volume* at 134.

On January 4, 2015, Marsh was travelling on Interstate 70 in a Dish company vehicle when she lost control of the vehicle, veered off the roadway, and struck

---

[1] We held oral argument in this matter at Blackford High School on April 6, 2018. We commend counsel for their excellent written and oral presentations. We also thank the staff and students for their hospitality.

an embankment that caused the vehicle to flip several times until it came to rest upright on all four tires. Marsh was ejected from the vehicle. Marsh was transported to Terre Haute Regional Hospital and then to Methodist Hospital in Indianapolis. Marsh suffered a right femur fracture with artery involvement, a left tibia fracture, bilateral rib fractures, vertebral body fractures, a concussion, and a grade 3 liver injury. The crash report indicates that at the time of the accident, it was snowing and ice was forming on the roadway surface.

[5] On February 13, 2015, Dish filed a denial of worker's compensation benefits for Marsh, and a week later, on February 20, 2015, Dish terminated Marsh's employment. Dish based its denial of benefits and termination decision on Marsh's knowing disregard of Dish's written safety policies (driving/speed and failing to wear a safety appliance) and drug policy (marijuana). Marsh filed her Application for Adjustment of Claim with the Board on March 23, 2015. A hearing before a single hearing member was held on September 26, 2016. Abiding by the single hearing member's request, Dish did not present live testimony from its expert witness, William Newberry, but rather, submitted Newberry's report and deposition for the single hearing member's consideration.

[6] At the hearing, Marsh testified that she has no recollection of the crash and that she did not know if she was wearing her seatbelt. Marsh testified, however, that she had "a hematoma about the size of a grapefruit where the belt buckle was on my side" and that she had bruising around her pelvic area that was of the same dimensions as a seatbelt. *Transcript* at 14. A friend of Marsh's also

testified that she visited Marsh in the hospital and observed bruising across Marsh's waist and from her left shoulder down to her right hip that she believed to be consistent with the dimensions of a seatbelt. In addition, Marsh admitted that she had received two prior infractions for failing to wear her seatbelt, but indicated that after the last one, she "made it a point to" wear her seatbelt. *Id.* at 12.

[7] Also before the single hearing member were twenty exhibits stipulated to by the parties. The crash report prepared by a responding police officer and dated January 4, 2015, indicates that "NO RESTRAINT" was used by Marsh. *Appellant's Appendix Vol. 2* at 83. The officer preparing the report also noted that a nurse at Methodist Hospital advised that "there were no signs that [Marsh] was wearing a seatbelt at the time of the crash." *Id.* at 82. Dr. Ralph Buschbacher performed an independent medical examination of Marsh and reviewed the discharge summary from Methodist Hospital and medical records from Terre Haute Regional Hospital, among others. Although he asserted no opinion as to whether Marsh was wearing a seatbelt, he did note that in the discharge summary from Methodist Hospital, it was indicated that "[p]er EMS report," Marsh "was the restrained driver involved in a 5-car pileup with rollover." *Id.* at 95. He also noted that the medical records from Terre Haute Regional Hospital stated that Marsh was "unrestrained in a motor vehicle accident." *Id.* at 103.

[8] Michael Fronckowiak, operations manager for Dish's Terre Haute location at the time of Marsh's accident, testified that part of Dish's motor vehicle safety

policy was that seatbelts must be worn while driving or riding in a Dish vehicle used for company business. He also testified that he visited Marsh in the hospital the day after the accident and that she had told him that "she was not wearing her seatbelt and she usually does not." *Transcript* at 48.

[9] The parties also stipulated to the report and deposition of William Newberry, a biomechanical engineer and accident reconstructionist. At the conclusion of the hearing before the single hearing member, Dish requested that the single hearing member consider such evidence. In his report, Newberry noted that he had examined the vehicle driven by Marsh and reviewed evidence related to the crash. Specifically, he collected data from the airbag control module (ACM) that indicated the driver's seat belt was "UNBUCKLED" at the time of the accident. *Exhibits* at 92. His inspection of the driver's seatbelt restraint system after the accident "revealed an absence of evidence indicative of occupant loading and use during the subject incident." *Appellant's Appendix Vol. 2* at 149. During his inspection of the vehicle, Newberry noted contact abrasions on the interior headliner above the driver's side window opening and on the interior driver side door. He opined that these markings were consistent with the occupant loading into the door during the rollover event and ejection through the driver's side window.

[10] As part of his report, Newberry set forth descriptions of the accident as found in various medical records. In all but the discharge summary from Methodist Hospital, notations in the medical records indicated that Marsh was an unrestrained driver. He also summarized the medical findings regarding

Marsh's injuries. Considering all of the information before him, Newberry concluded that Marsh "was not utilizing the available 3-point seatbelt at the time" of the accident." *Id.* at 150. He further opined:

> Based on the available information, including detailed examination of the subject vehicle, [Marsh's] injuries most likely occurred as a result of loading she experienced during her unrestrained motion, projected contacts with the vehicle interior, and her ejection from the vehicle. . . . Had Ms. Marsh chosen to use the available and functional 3-point seatbelt restraint system, her excursion within the vehicle would have been limited; her projected contact and loading within the occupant compartment would have been mitigated; and her ejection and subsequent high-energy impact with the ground would have been prevented.

*Id.* at 151.

[11] On December 2, 2016, the single hearing member issued an order, including findings of fact and its conclusions. In its findings of fact, the single hearing member noted Marsh's testimony regarding seat belt use as well as contrary information contained in Newberry's report. The single hearing member then made the following conclusions:

1. [Marsh] sustained injuries when her work vehicle left the roadway and rolled, ejecting her from the vehicle.

2. The weather conditions were very bad at the time of her crash, so much so that the vehicle was left until conditions improved so as not to place recovery personnel at risk.

3.      [Marsh] presented evidence from which it may plausibly be concluded that [Marsh] was wearing her safety belt at the time of the crash, including the pattern of bruising most consistent with seat belt use as well as [Marsh]'s statement of her practice of wearing a safety belt after prior infractions for failure to wear a safety belt.

4.      The Single Hearing Member does not find or conclude that [Marsh] was not wearing a seatbelt at the time of her crash and therefore [Dish] has not carried its burden that [Marsh]'s compensation should be barred for failure to wear a seatbelt.

5.      The Single Hearing Member is likewise unpersuaded that the presence in [Marsh]'s system of cannabinoids and opiates, per a drug screen placed in evidence, as well as the expert's statement of potential effects from the same, satisfy [Dish]'s burden on the issue of intoxication. The Single Hearing Member finds and concludes that it is more probable than not that [Marsh]'s wreck occurred due to icy conditions on the roadway.

*Id*. at 69-70. The Single Hearing Member concluded that Marsh was entitled to compensation for her temporary total disability for the period between the date of the accident and continuing until she attains maximum medical improvement.

[12]     On December 30, 2016, Dish requested review of the single hearing member's decision. The Board held a review hearing on May 15, 2017. On June 21, 2017, the Board issued its order adopting the single hearing member's findings of fact and conclusions of law with one additional finding/conclusion:

> Even if [Marsh] was not in fact wearing her safety belt at the time of the wreck, that fact would not have been the proximate cause of her injuries. There is no insufficient basis for expert opinion on this issue.

*Id*. at 61. Dish now appeals. Additional facts will be provided as necessary.

### Discussion & Decision

[13] The Worker's Compensation Act (the Act) requires employers to compensate their employees for personal injury or death by accident arising out of and in the course of the employment. *Waters v. Ind. State Univ.*, 953 N.E.2d 1108, 1112 (Ind. Ct. App. 2011) (citing Ind. Code § 22-3-2-2(a)), *trans. denied*. "An accident occurs in the course of employment "when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto." *Id*. at 1112-13 (citation and quotation marks omitted). It is the claimant's burden to prove a right to compensation under the Act. *Smith v. Bob Evans Farms, Inc.*, 754 N.E.2d 18, 23 (Ind. Ct. App. 2001), *trans. denied* (2002).

[14] The Act also sets forth numerous affirmative defenses to liability available to an employer that bar an employee's worker's compensation claim. Specifically, I.C. § 22-3-2-8 provides:

> No compensation is allowed for an injury or death due to the employee's knowingly self-inflicted injury, his intoxication, his commission of an offense, his knowing failure to use a safety

appliance, his knowing failure to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous position in the place of work, or his knowing failure to perform any statutory duty.

The employer has the burden of proving an affirmative defense. *Id.*

[15] Here, the parties do not dispute that Marsh's injuries arose out of and occurred in the course of her employment with Dish. Rather, the issue presented relates to whether Dish established the affirmative defense that Marsh was not wearing her seatbelt at the time of the crash so as to bar Marsh from receiving worker's compensation.

[16] On appeal from a decision of the full Board, we are bound by the Board's factual determinations. *Morris v. Custom Kitchen & Bath*, 64 N.E.3d 912, 916 (Ind. Ct. App. 2016), *trans. denied*. However, we may disturb the Board's factual determinations if we determine that the evidence is undisputed and leads inescapably to a result contrary to the one reached by the Board. *Id.* In reviewing a decision of the Board, we neither reweigh the evidence nor judge the credibility of witnesses; we determine only whether substantial evidence, together with any reasonable inferences that flow therefrom, support the Board's findings and conclusions. *Waters v. Ind. State Univ.*, 953 N.E.2d 1108, 1112 (Ind. Ct. App. 2011), *trans. denied*. In doing so, we apply a two-tiered standard of review. *Id.*

> We first review the record to determine whether there is competent evidence of probative value to support the Board's findings, and then determine whether the findings support the

decision. As a general matter, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions of law. However, we may disturb the Board's factual determinations if we determine that the evidence is undisputed and leads inescapably to a result contrary to that reached by the Board. We review the Board's conclusions of law de novo.

*Id*. (citations omitted).

[17] Dish is appealing the Board's determination that Dish did not carry its burden of proving that Marsh's compensation should be barred for failure to wear a seatbelt. Dish is therefore appealing a negative judgment. When reviewing a negative judgment, we will not disturb the Board's findings of fact unless we conclude that the evidence is undisputed and leads inescapably to a contrary result, considering only the evidence that tends to support the Board's determination together with any uncontradicted adverse evidence. *Perkins v. Jayco*, 905 N.E.2d 1085, 1088 (Ind. Ct. App. 2009). We will construe the Act liberally in favor of the employee. *Id*. In other words, to prevail upon appeal, Dish is required to show that there was no probative evidence from which the Board might reasonably conclude as it did.

[18] Dish challenges the Board's determination in several respects. Dish argues that the Board relied on "insubstantial evidence and drew unreasonable inferences" in concluding that it did not meet its burden of proving that Marsh knowingly failed to use a safety appliance, i.e., a seatbelt. *Appellant's Brief* at 19. In concluding that Marsh was wearing her seatbelt at the time of the crash, the

Board relied upon the testimony of Marsh and Marsh's friend that Marsh had bruising in a pattern consistent with seat belt use. The Board also noted Marsh's own testimony that it was "her practice of wearing a safety belt" after having received prior infractions for failure to use a seatbelt. *Appellant's Appendix Vol. 2* at 61. Dish asserts that this evidence is neither competent nor probative in value and that there is no other substantial evidence that directly supports or from which a reasonable inference can be made to affirm the Board's conclusion. Dish maintains that the other evidence in the record is substantial and contrary to the Board's conclusion.

[19] Dish's argument is simply a request to reweigh the evidence and judge the credibility of the witnesses. The Board identified the evidence concerning the pattern of bruising as support for its conclusion that Marsh was wearing her seatbelt at the time of the accident. Contrary to Dish's claim, the testimony of Marsh and her friend as to the pattern of bruising seen on Marsh's body, i.e., bruising from the left shoulder to the right hip and bruising across the waist with a width of three inches, is competent evidence. Their testimony in this regard was not based on speculation, guess, or conjecture, but rather was based on their personal observations of the bruising pattern.

[20] Also cited as supporting the Board's decision was Marsh's testimony that it was her habit to wear her seatbelt especially after having been cited for failing to wear her seatbelt. Dish asserts, "a reasonable person could only conclude from [the evidence that Marsh had previously been cited for not wearing her seatbelt] that it was customary for Marsh not to wear a seatbelt." *Appellant's Brief* at 19.

This is of course one inference that could be drawn from such testimony. The Board, however, acknowledged Marsh's previous citations for failing to wear a seatbelt, and nevertheless, accepted her testimony that since her previous citations, it was "her practice of wearing a safety belt." *Appellant's Appendix Vol. 2* at 70. Although contrary to the inference espoused by Dish, the inference drawn by the Board is no less reasonable.

[21] In sum, competent evidence supports the Board's findings that Marsh sustained a pattern of bruising "consistent with seatbelt use" and the Board clearly found credible Marsh's testimony that it was her habit to wear her seatbelt. Such findings support the Board's conclusion that Marsh was wearing her seatbelt at the time of the crash. To find otherwise on appeal would require us to discount the testimony of Marsh and her friend and accept the evidence offered by Dish. Our standard of review precludes us from doing so.

[22] Dish also argues that the Board applied the wrong standard when it found that it "may *plausibly* be concluded" that Marsh was wearing her seatbelt at the time of the crash. *Appellant's Appendix Vol. 2* at 70 (emphasis supplied). While perhaps not the best choice of words, it is clear from reading the order in its entirety that the Board considered all of the evidence before it and determined that the weight of the evidence supported the conclusion that Marsh was

wearing her seatbelt at the time of the crash. On appeal, we will not reweigh the evidence.[2]

[23] On cross-appeal, Marsh requests that her worker's compensation award be increased by ten percent. Ind. Code § 22-3-4-8(f) provides: "An award of the full board affirmed on appeal, by the employer, shall be increased thereby five percent (5%), and by order of the court may be increased ten percent (10%)." Generally, an order to increase the award by ten percent is not warranted unless the issues presented upon appeal are frivolous, appellate review is thwarted by the employer's actions, or there has been an extended period of time within which the injured worker has been prevented from obtaining worker's compensation benefits. *Midwest Equip. & Supply Co. v. Garwood*, 87 N.E.3d 33, 37 (Ind. Ct. App. 2017) (citing *Inland Steel Co. v. Pavlinac*, 865 N.E.2d 690, 703 (Ind. Ct. App. 2007)). As we are affirming the full Board's award, Marsh's award is to be increased by 5% as required by the Act.

[24] In arguing for a ten percent increase, Marsh asserts that Dish has engaged in substantive and procedural bad faith. Marsh maintains that Dish's sufficiency argument goes against our well-settled standard of review that prohibits this court from reweighing the evidence. Dish did present a sufficiency argument and, while the outcome was ultimately dictated by our standard of review, we

---

[2] In its appellant's brief, Dish also argued that it was denied due process when it was prevented from presenting live testimony from its expert witness. In response, Marsh argued that Dish waived this argument by failing to object to the procedure used by the Board. At oral argument, Marsh abandoned this argument.

cannot say that Dish's argument was frivolous. Indeed, this was a close case and the evidence was conflicting. Further, the delay occasioned by Dish's denial of Marsh's worker's compensation claim and appeal following the Board's decision was not unreasonable. With regard to procedural bad faith, Marsh cites typographical errors and perceived violations of the appellate rules, none of which are so egregious as to warrant an increase of Marsh's worker's compensation award by ten percent.

In sum, substantial evidence and reasonable inferences support the Board's conclusion that Marsh was wearing her seatbelt at the time of the accident, and thus, Dish did not meet its burden of proving an affirmative defense to Marsh's worker's compensation claim. We find no basis upon which to increase Marsh's worker's compensation award beyond five percent.

Judgment affirmed.


Robb, J. and Bradford, J., concur.